The Atlanta & West Point Railroad Company *vs.* Hudson.

---

The Atlanta & West Point Railroad Company *vs.* Hudson.

1. The summons in a justice court need not state the cause of action with the particularity required in regular pleading. The cause of action being the hurting and wounding of the plaintiff's horse, and the damages being laid at one hundred dollars, any damage not exceeding that amount, which is sufficiently certain and proximate

to be recoverable on an ordinary declaration for such an injury, may be proved on the summons.

2. Compensation in damages for hurting and wounding a farm horse, whereby he was temporarily disabled for service in the season of farm labor, includes reasonable hire for the time (in this instance not more than two weeks) during which the disability continued, as well as making good any diminution in his market value occasioned by the permanent effects of the injury.

3. A railroad company having enclosed its track with a skeleton fence made of wire set with barbs, must use due diligence in running its trains, not only to avoid injuring live stock upon the track, but to avoid precipitating them by fright upon the fence and causing them to be thus mangled or bruised.

Justice Courts. Pleadings. Railroads. Damages. Fence. Diligence. Before Judge Buchanan. Campbell Superior Court. August Term, 1878.

Hudson brought complaint against the railroad for damages to personal property. Attached to the summons was a statement, in brief, as follows: On April 7th, 1878, the defendant, by the running of its locomotives, etc., having before that time enclosed its track with an unlawful fence, the wire thereon being supplied with sharp, dangerous barbs or points, caused one mare belonging to plaintiff, of the value of $100.00, to become entangled in said wire on said fence, whereby she was bruised, to the damage of plaintiff $100.00.

The defendant pleaded not guilty, and that if the mare was injured, it was the plaintiff's fault, for which the defendant was not liable.

The magistrate rendered judgment for the plaintiff for $50.00, and the defendant appealed.

The evidence, upon the trial in the superior court, disclosed the following facts: The defendant, at the place of the injury, had erected a wire fence for the purpose of keeping stock off its track. The posts of this fence were sixteen feet apart, connected by two wires; the top wire was about three feet from the ground, and the distance between the wires from eighteen inches to two feet. On the

wires were sharp barbs or points, placed there for the purpose of keeping stock from pushing the fence down. Upon the approach of the train, the horse was on the right-hand side of the road; thence he ran down on to the track, followed it for a short distance, and then crossed to the left, where the wire fence was. He struck the fence at about ten feet from the track, fell on it, and was considerably injured.

As to the diligence exerted by the employees of the defendant in control of the train, the evidence was conflicting; that for the plaintiff tended to show that no whistle was blown until the engine was immediately opposite the mare, which was standing quietly by the fence; that then short and repeated whistles came from the engine, frightening the animal, causing her to attempt to break through the fence and thus injuring her; that the speed of the train was not checked at all. The employees on the train testified that alarm whistles were blown as soon as the mare was discovered on the track, and continued until the speed was slackened from twenty or twenty-five miles per hour to ten miles; that it was necessary to continue the whistling to keep the mare ahead, in order to stop the train, and also to keep her off the track after she had left it. That everything possible was done to prevent any injury to the animal.

A part of the evidence as to value, hire, etc., went to show that the mare was used for work on the farm, was worth before the injury $100.00, was unfit to plow for two weeks, during which time, it being plowing season, her hire was worth $1.00 per day; and that her value was impaired by the injury some seventy-five per cent.

The jury found for the plaintiff $69.00. The defendant moved for a new trial upon the following grounds:

1. Because the court erred in allowing proof as to the value of the horse per day for plowing, the defendant objecting upon the ground that such evidence was not authorized by the pleadings.

2. Because the verdict was contrary to law and to evidence.

3. Because the verdict was contrary to the charge of the court, the only material portion of which was as follows:

"If you believe from the evidence in the case, that the defendant erected the fence at the place where the horse was injured, and if you believe, from the evidence, that the natural tendency of the fence was to injure stock, and if you believe, from the evidence, that the defendant, by the running of the locomotives, cars or other machinery, without ordinary care and reasonable diligence, caused the mare to run against the fence, and that she thereby became injured, the plaintiff would be entitled to recover. But if the employees of defendant, in the running of locomotives or other machinery of the defendant, used and exercised ordinary care and reasonable diligence to prevent the injury, the plaintiff would not be entitled to recover."

The motion was overruled, and the defendant excepted.

THOMAS W. LATHAM, for plaintiff in error, cited, on objection to evidence, constitution of 1877, art. 6, §7, par. 2; 43 *Ga.*, 601; 44 *Ib.*, 123; 40 *Ib.*, 231. Verdict contrary to law and evidence, Code, §§3000, 3717; 3 Blackstone's Com., 170; 27 *Ga.*, 481; 15 *Ib.*, 61; 28 *Ib.*, 418; 38 *Ib.*, 541; 39 *Ib.*, 725; 42 *Ib.*, 631; 9 *Ib.*, 425; Wood on Nuisance, 896. Negligence, Code, §§3033, 3034, 3042; 56 *Ga.*, 540; 48 *Ib.*, 464; 13 *Ib.*, 68; 33 *Ib.*, 110; 30 *Ib.*, 22; 31 *Ib.*, 133; 29 *Ib.*, 437.

REID & LONGINO; R. M. HOLLEY, for defendant, cited, on admission of evidence, Code, §§3065, 3068, 3071; 43 *Ga.*, 601. Verdict contrary neither to law nor evidence, Code, §§3033, 3034, 3042, 3368; 56 *Ga.*, 541; 42 *Ib.*, 304, 331; 49 *Ib.*, 373, 606; 1 Addison on Torts, 214; Shear. & Red. on Neg., 344, 463. Fence was nuisance, Code, §3000; 2 Bouv. L. Dic., 245; 3 Blackstone's Com., top p. 170; 39 *Ga.*, 725.

BLECKLEY, Justice.

1. In a justice court, local government is realized in its last analysis. This tribunal is our primary—most rudimentary organ of home rule. It is the *ne plus ultra* of judicial simplicity. An action in it is not by petition or declaration, but by summons; and the summons may be a very scanty document. 61 *Ga.*, 388. It seems designed merely to put the defendant in that state of mind in which a man a little roused and irritated exclaims, "What's the matter? what's up? what's to pay?" Practically, as experience teaches, when curiosity is thus excited, both memory and inquiry become active, and it is not long until the surprised individual knows clearly and definitely " what it's all about." The summons now before us, as amplified by the statement annexed to it, is unusually full and specific. It describes the wrongful act complained of, dates it, alleges that its effect was to bruise the plaintiff's mare, and lays the damages to the plaintiff (not to the mare) at one hundred dollars. Now, it is evident that to bruise a man's mare may in fact damage the owner in one or both of two ways: it may disable her for a time, thus causing the loss of her labor and services during that period, or it may impair her value permanently. If the former as well as the latter damage would be sufficiently certain and proximate to be recoverable on an ordinary declaration in the superior court for such an injury, with full averments according to Chitty, we have no doubt that evidence touching it was admissible under this summons.

2. The question, then, is this: What is the legal measure of damages for an injury to a farm horse, when the horse is both disabled temporarily for service in the season for farm labor, and permanently impaired in market value; supposing the action to be well brought, and the pleadings broad enough to grasp the actual damages in their full extent? Reason would say that both kinds of damage above mentioned ought to fall within the recovery. A limit, as to the amount, to a sum not exceeding the full value of the animal with interest thereon, would seem

proper. This limit is reasonable because the capital invested in the property is destroyed in so far as the injury has diminished its value, just as the whole capital would have been destroyed if the animal had been killed outright; and the accident that life was spared ought not to subject the wrong-doer to make a larger compensation in the aggregate than if death had immediately ensued. Were hire to go on against him as long as the animal might remain in a disabled or partially disabled condition, the aggregate might amount in the end to several times the original sound value. To compel the defendant both to restore that part of the capital which his wrongful act had carried out of existence, and to pay hire upon it as well as upon the part of the capital not destroyed, would in some cases go to an extreme, while in other cases it would not. It will serve for a correct general rule; but if indiscriminately applied in its full extent to all cases alike, it would, in a number of them, lead to something like the consequence of making a part greater than the whole; that is, a mere injury to property would be treated as a graver tort than its entire destruction. Both the rule and its limitation as here laid down will be found to be rooted somewhat in authority, as well as in principle. 8 Allen, 560; 105 *Mass.*, 80; 42 *Vt.*, 15; Shear. and Red. on Neg. §602. Of course, nothing is to be understood from what we have said, against adding exemplary damages where the facts of the particular case warrant them.

3. What is a lawful fence is defined by the Code, in sections 1443 and 1444? A fence three feet high, and composed of two wires armed with projecting barbs, is not such a fence as will justify a railroad company whose line is enclosed thereby, in relaxing the full measure of diligence required by law in guarding against injuries to live stock from the running of locomotives and cars. On the contrary, if the wires would impede stock in escaping from the vicinity of the track in situations of danger, and would occasion a risk of hurt to them by being caught or thrown in attempting to get over or through the fence, in making

off from the railway, due care not to frighten or drive them upon the wire fence would be no less incumbent upon the company, than the use of ordinary diligence to avoid injuring them upon the track. The peril in such case would be a double or compound one, consisting of danger from the train on the one hand, and of danger from the fence on the other. Precautions against both would be necessary.

Judgment affirmed.