In the Supreme Court of Georgia

Decided:   June 6, 2016

S15G1184.  BARKING HOUND VILLAGE, LLC., et al. v. MONYAK, et al.

THOMPSON, Chief Justice.

The subject matter of this case is near and dear to the heart of many a Georgian in that it involves the untimely death of a beloved family pet and concerns the  proper measure of damages available to the owners of an animal injured or killed through the negligence of others.  Observing that pet dogs are considered personal property under Georgia law, but finding that not all dogs have an actual commercial or market value, the Court of Appeals held that where the actual market value of the animal is non-existent or nominal, the appropriate measure of damages would be the actual value of the dog to its owners.  See Barking Hound Village, LLC v. Monyak, 331 Ga. App. 811, 813-814 (771 SE2d 469) (2015).  The Court of Appeals concluded that the actual value of the animal could be demonstrated by reasonable veterinary and other expenses incurred by its owners in treating its injuries, as well as by other

economic factors, but held that evidence of non-economic factors demonstrating the dog's intrinsic value to its owners would not be admissible. Id.

This Court granted certiorari to consider whether the Court of Appeals erred in holding that the proper measure of damages for the loss of a pet dog is the actual value of the dog to its owners rather than the dog's fair market value. Because we find that long-standing Georgia precedent provides that the damages recoverable by the owners of an animal negligently killed by another include both the animal's fair market value at the time of the loss plus interest, and, in addition, any medical and other expenses reasonably incurred in treating the animal, we affirm in part and reverse in part the Court of Appeals' decision.

The damages at issue in this case arise from the death of a mixed-breed dachshund owned by Robert and Elizabeth Monyak. In 2012, the Monyaks boarded Lola, their 8 ½ -year old dachshund mix, for ten days at a kennel owned by Barking Hound Village, LLC ("BHV") and managed by William Furman. Along with Lola, the Monyaks boarded their 13-year old mixed-breed Labrador retriever, Callie, who had been prescribed an anti-inflammatory drug for arthritis pain – medication which the Monyaks gave to kennel personnel with directions that it be administered to Callie. Three days after picking up their dogs from

2

BHV, Lola was diagnosed with acute renal failure. Despite receiving extensive veterinary care over a nine-month period, including kidney dialysis treatment, Lola died in March 2013.

The Monyaks sued BHV and Furman for damages alleging that while boarded at the kennel Lola was administered toxic doses of the medication prescribed for Callie, a much larger dog. The Monyaks asserted various claims of negligence against BHV and Furman, and sought compensatory damages, including over $67,000 in veterinary and other expenses incurred in treating Lola. In addition, alleging fraud and deceit on the part of the defendants, the Monyaks sought litigation expenses and punitive damages.

BHV and Furman moved for summary judgment on all the Monyaks' claims asserting that the measure of damages for the death of a dog was capped at the dog's fair market value and that, in this case, the Monyaks failed to prove Lola had any market value, thus their claims were barred as a matter of law. Alternatively, the defendants sought partial summary judgment on the Monyaks' claims for punitive damages and fraud.

In its order denying summary judgment to the defendants except as to the Monyaks' fraud claim which the court found duplicative of their negligence and

punitive damages claims, the trial court held the Monyaks would be permitted to present evidence of the actual value of the dog to them, as demonstrated by reasonable veterinary and other expenses incurred in her treatment, as well as evidence of non-economic factors demonstrating the dog's intrinsic value. Further, the trial court found sufficient evidence existed to create a jury issue on the Monyaks' claim for punitive damages pursuant to OCGA § 51-12-5.1 (b).[1] The Court of Appeals granted the defendants' application for interlocutory review, and the Monyaks cross-appealed challenging the trial court's grant of partial summary judgment with respect to their fraud claim.

On appeal, the Court of Appeals affirmed the trial court's ruling rejecting a market value cap on damages. See Monyak, 331 Ga. App. at 814. Finding the evidence showed Lola had little or no market value,[2] the Court of Appeals

---

[1] This statute allows for an award of punitive damages in tort actions where the defendant's actions show "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Here, the record includes evidence that the defendants became aware during the dog's boarding stay that Lola had wrongfully been administered Callie's medication and, instead of notifying the Monyaks and/or seeking prompt veterinary care for the dog, attempted to hide the error, thus allegedly exacerbating the harm to Lola. Also included is evidence of multiple prior incidents involving errors in the administration of medication to dogs at BHV and Furman's personal knowledge of prior incidents.

[2] Evidence in the record showed that the Monyaks adopted Lola from a rescue center when she was about two years old, there was no purchase price for the dog, she was not a pure breed or a show dog, she had never generated any revenue, and that at the time she was boarded at the kennel, her market value to the public at large was non-existent or nominal.

4

observed that "[w]here the absence of a market value is shown, 'the measure of damages . . . is the actual value to the owner.'" Id. at 813, quoting Cherry v. McCutchen, 65 Ga. App. 301, 304 (16 SE2d 167) (1941). Noting, however, that, in Cherry, no recovery was allowed for the sentimental value of the object to the owner, the Court of Appeals concluded that damages for the intrinsic value of the dog to the Monyaks were not recoverable. Monyak, 331 Ga. App. at 815. Finally, the Court of Appeals affirmed the trial court's grant of partial summary judgment on the Monyaks' fraud claim, albeit on different grounds than the trial court.[3]

BHV and Furman contend that the Court of Appeals erred in holding that an actual value to owner standard of damages was appropriate in this case, rather than the fair market value standard of damages generally applicable in actions for the negligent injury to, or loss of, personal property. They assert that under the fair market value standard a plaintiff is prevented from recovering an amount of damages against a tortfeasor greater than the fair market value of the property prior to its impairment, and thus argue that the entire amount of damages

---

[3] We note that the Court of Appeals' opinion does not address the trial court's denial of partial summary judgment on the Monyaks' punitive damages claim. Accordingly, this claim remains pending below.

recoverable by the Monyaks cannot exceed the fair market value of their dog. Moreover, BHV and Furman claim that Georgia case law specifically limits the recovery of animal treatment expenses to an animal's pre-injury fair market value, citing Atlanta & West Point R. Co. v. Hudson, 62 Ga. 679, 683 (2) (1879) and Southern Ry. Co. v. Stearnes, 8 Ga. App. 111 (68 SE 623) (1910).

The Monyaks, on the other hand, contend the Court of Appeals correctly rejected a market value cap on damages, arguing that to limit damages for the loss of a family pet to market value would not only be unjust, but would go against both Georgia precedent and the weight of authority from other jurisdictions. Although agreeing with the Court of Appeals that an actual value to owner standard is the appropriate measure of damages in this case, the Monyaks ask this Court to clarify that evidence of non-economic factors, though inadmissible for proving the dog's intrinsic value, would be admissible for other purposes, such as proving the reasonableness of their decision to incur significant expenses in an effort to save the life of their pet.

1. The parties agree, and Georgia law clearly provides, that a pet dog has value and is considered the personal property of its owner. See Columbus R. R. Co. v. Woolfolk, 128 Ga. 631, 633 (58 SE 152) (1907). See also Wilcox v.

6

State, 101 Ga. 563, 565 (28 SE 981) (1897) (finding Georgia law pertaining to domestic animals applicable to dogs); Graham v. Smith, 100 Ga. 434, 436 (100 SE 225) (1897) (holding that the owner of a dog has a property right in the animal sufficient to sustain an action for trover).  As a result, the owner of a dog may maintain an action against anyone who wantonly, maliciously, intentionally, or negligently injures or kills it.  See Woolfolk, 128 Ga. at 634; Vaughn v. Nelson, 5 Ga. App. 105, 108-109 (62 SE 708) (1908). See generally Chalker v. Raley, 73 Ga. App. 415 (37 SE2d 160) (1946).

2.  Having established that dogs are personal property for which a suit for damages will lie, we look to Georgia precedent in order to determine the appropriate measure of damages recoverable by a dog's owners in such actions. In so doing, we find the Court of Appeals erred in deciding that application of an actual value to owner standard was the appropriate measure of recoverable damages, but additionally find that a cap on all damages based on application of the fair market value standard as urged by defendants is likewise incorrect.

Generally, in a suit to recover damages to personal property it is a well-established principle that "a plaintiff cannot recover an amount of damages against a tortfeasor greater than the fair market value of the property prior to

7

impairment." See <u>MCI Communications Svcs. v. CMES, Inc.</u>, 291 Ga. 461, 463-464 (728 SE2d 649) (2012). However, over 120 years ago this Court decided that such a limitation was not appropriate in negligence cases involving the injury or death of an animal. See <u>Telfair County v. Webb</u>, 119 Ga. 916, 919 (47 SE 218) (1904); <u>Atlanta Cotton-Seed Oil Mills v. Coffey</u>, 80 Ga. 145, 150 (4 SE 759) (1887). Instead, this Court determined that where an animal is negligently injured and subsequently dies as a result of those injuries, the proper measure of damages recoverable by the animal's owner includes not only the full market value of the animal at the time of the loss plus interest, but also expenses incurred by the owner in an effort to cure the animal. See <u>Webb</u>, 119 Ga. at 919; <u>Coffey</u>, 80 Ga. at 150.

In <u>Webb</u>, a plaintiff whose horse was injured after stepping through rotted wood on a county bridge sought damages from the county alleging that his mare was so badly crippled that, after attempting at great trouble and expense to cure her, he had disposed of her as being practically worthless. <u>Webb</u>, 119 Ga. at 917. Following a jury award for the plaintiff, the defendant appealed and, granting a new trial based on the trial court's failure to properly charge the jury on negligence and proximate cause, this Court made the following observation

8

with respect to the recovery of damages:

> Under the ruling in Atlanta & W.P.R. Co. v. Hudson, 62 Ga.679, approved Atlanta Cotton-Seed Oil Mills v. Coffey, 80 Ga. 150 . . . the plaintiff's measure of damages, if he recovered, would include reasonable hire of the animal for the time during which she was temporarily disabled for service, as well as making good any diminution in her market value occasioned by the permanent effects of the injury; such amounts, however, not to exceed, in the aggregate, the market value of the animal, with interest thereon. *Plaintiff would also be entitled to recover for any expenses incurred, during the time the mare was disabled for service, in keeping her and treating her injuries*.

Id. at 919 (emphasis supplied). In a subsequent case with almost identical facts, the Court of Appeals followed this Court's instructions in Webb by allowing, as a separate item of damages not limited by the value of the horse, the recovery of expenses incurred in keeping and treating the animal during the period of its disability. See Telfair County v. Clements, 1 Ga. App. 437, 440 (57 SE 1059) (1907).

BHV and Furman rely on the Court of Appeals' later decision in Stearnes, also a horse injury case, to argue that the expense of looking after and treating an animal during its disability should not be considered a separate component of damages, but instead is included in the aggregate amount limited by the animal's market value. See Stearnes, 8 Ga. App. at 111. A review of the

9

opinion in <u>Stearnes</u>, however, reveals that the language supportive of this argument is found only in dicta. Id. at 112. Further, to the extent this language implies that the entire amount of damages recoverable for the tortious injury of an animal cannot exceed the animal's fair market value, the <u>Stearnes</u> opinion clearly misstates both <u>Webb</u> and <u>Coffey</u>. Indeed, in <u>Coffey</u>, wherein the plaintiff's horse suffered severe burns to his hoofs and ankles after being exposed to caustic chemicals on the defendant's property and later died, this Court explained that while the loss of hire of the horse would have been a recoverable element of damages had the horse lived,

> where the personal property is lost or destroyed by the negligent acts of another . . . the [plaintiff] is entitled to recover the full value of the property lost or destroyed, according to the market rates current at the time of the loss, and interest on the same. *He is also entitled to recover the expense of keeping the horse, medical attendance, medicines, and things of that sort*; but he is not entitled to recover the hire during the sickness of the horse, in case the horse dies.

<u>Coffey</u>, 80 Ga. at 150. (Emphasis supplied). An important distinction recognized in both these cases is that while a cap on the recovery of loss of use damages exists for an injured animal, there is no such cap on the amount of damages recoverable with respect to actual expenditures associated with the animal's treatment and recovery. See <u>Webb</u>, 119 Ga. at 918; <u>Coffey</u>, 80 Ga. at

10

150. Thus, where the injured animal survives, its owner is entitled to receive loss of hire and diminution in market value *up to* the full market value of the animal in addition to the animal's reasonable medical costs and treatment; whereas, when the animal fails to recover, damages are limited to the market value of the animal plus interest, as well as the reasonable costs expended on its care and treatment. See Webb, 119 Ga. at 918; Coffey, 80 Ga. at 150.[4]

In adopting a different measure of damages for use in tort cases involving injury to animals, this Court relied on a prominent 19th century legal treatise on negligence, see Coffey, 80 Ga. at 150, citing Sher. & R. Neg. §603 and notes, in which the authors promoted such a distinction and articulated the rationale

---

[4] This Court's observation in MCI that "[t]he loss of use of damaged but repairable property measured by the reasonable rental rate has its roots in cases involving injury to domestic animals such as horses and mules," in no way vitiates this Court's holdings in Coffey and Webb or implies that the general fair market value rule of damages now applies in tortious injury to animal cases. 291 Ga. at 463. Rather, in MCI, this Court simply refused to allow the plaintiff to recover loss of use damages in addition to actual damages where it failed to prove monetary loss. It was in acknowledging the distinction between actual damages and windfall damages that this Court in MCI observed that

> [T]he maximum recovery for a repairable [property] including loss of use may not exceed value before the injury. [Cits.] This ceiling removes temptation for a party to seek to make a profit out of the unfortunate occurrence and at the same time makes him financially whole.

Id., quoting Firestone Tire & Rubber Co. v. Jackson Transp. Co., 126 Ga. App. 471, 478 (2) (191 SE2d 110) (1972). As in MCI, this language in Firestone was directed at the question of limitations on the recovery of damages for loss of use, something not at issue in this case.

11

behind it, stating:

> [I]n cases of injury to animals . . . the plaintiff ought to recover for expenses reasonably incurred in efforts to cure them, in addition to the depreciation in their value, or to their whole value where they are finally lost. The law would be inhumane in its tendency if it should prescribe a different rule, even where the animal eventually dies, since it would then offer an inducement to the owner to neglect its suffering.

Shearman & Redfield, Negligence § 603, at 680-681 (2nd ed. 1870).

By ensuring that property owners whose animals are negligently injured by another are able to recoup reasonable expenses incurred in attempting to save the animal, this Court's decisions in Webb and Coffey are consistent with the position taken by courts in a majority of states, including those which have adopted an actual value to the owner measure of damages to determine a pet dog's worth, see Strickland v. Medlen, 397 SW3d 184, 193, n.58 (Tex. 2013) (recognizing that "[w]hile actual value cannot include the owner's 'feelings,'. . . it can include a range of other factors [such as] purchase price, reasonable replacement costs . . . breeding potential . . . special training . . . veterinary expenses related to the negligent injury, and so on"), as well as those which have declined to do so, see Shera v. N.C. State Univ. Veterinary Teaching Hosp., 723 SE2d 352 (N.C. Ct. App. 2012) (awarding plaintiffs damages for the death of

their 12-year old dog due to veterinary malpractice in the amount of $3,105.72, which amount included reimbursement for the cost of the dog's medical treatment plus the replacement cost for a similar dog). Similarly, under the Federal Tort Claims Act, a dog owner has been allowed to recover veterinary expenses incurred in trying to save the life of a mixed-breed dog despite its ultimate death. See Kaiser v. United States, 761 F. Supp. 150, 156 (D.D.C. 1991) (awarding $1,786 in incurred veterinary expenses for a mixed-breed pet dog shot by a United States Capitol police officer).

At the time this lawsuit was filed, the Monyaks' injured dog was still alive and the veterinary fees incurred were in the neighborhood of $10,000. The fact that the dog's treatment ultimately proved unsuccessful and the animal died nine months later should not prevent the Monyaks from seeking compensatory damages for the reasonable veterinary fees incurred in their attempt to save their pet. Rather, we conclude, pursuant to long-established Georgia precedent, that the proper measure of damages recoverable by the Monyaks for the negligent injury and death of their dog includes both the dog's fair market value plus interest *and* any reasonable medical costs and other expenses they incurred in treating the animal for its injuries.

3. While we are sympathetic to the concerns expressed by the parties and others regarding the difficulties in establishing the fair market value of a family pet,[5] this Court long ago stated that, "[t]he value of [a] dog may be proved, as that of any other property, by evidence that he was of a particular breed, and had certain qualities, and by witnesses who knew the market value of such animal, if any market value be shown." Woolfolk, 128 Ga. at 635. Thus, in an action for damages arising from the allegedly tortious killing of a dog belonging to a 12-year-old boy, testimony was provided regarding the dog's breed and age, how the boy acquired the dog, how long he owned the animal prior to its death, and activities the boy did with the dog. See Chalker, 73 Ga. App. at 415. Although the only evidence presented of the dog's value was the boy's testimony that the dog was worth $100, the jury returned a verdict for the plaintiff in the amount of $10 and the plaintiff appealed, arguing that the verdict was contrary to the evidence. Id. Concluding that the jury was entitled to place

[5] We note that amicus briefs have been filed in this case by numerous entities concerned with the care and treatment of animals both in this State and nationwide. These groups include the Georgia Veterinary Medical Association, American Veterinary Medical Association, American Kennel Club, Cat Fanciers' Association, Animal Health Institute, National Animal Interest Alliance, American Pet Products Association, American Animal Hospital Association, Pet Industry Joint Advisory Council and the Animal Legal Defense Fund. The primary issue addressed by amici, however, is whether the law in Georgia should allow for the recovery of damages based on a pet's sentimental value to its owner, a position properly rejected by the Court of Appeals in this case and not disputed by either party on appeal. See Division 4, infra.

a different value on the property than that testified to by the witnesses, the Court of Appeals held that the jurors were authorized to consider the dog's allegedly vicious character and other qualities to reach their own conclusions regarding the dog's value. Id. at 418.[6] See also Padilla v. Padilla, 282 Ga. 273, 275-276 (646 SE2d 672) (2007) (observing that, with respect to items of a common nature, a plaintiff "need not offer any opinion evidence as to value . . . so long as the evidence contains facts upon which the [fact-finder] may legitimately exercise [its] own knowledge and ideas").

Georgia law provides that direct testimony regarding market value is opinion evidence and a witness need not be an expert to testify as to an object's value so long as the witness has had an opportunity to form a reasoned opinion. See OCGA § 24-7-701 (b)[7]; Schumpert v. Carter, 175 Ga. 860, 861 (166 SE

---

[6] In Chalker, the plaintiff alleged the defendant wantonly, intentionally, wilfully and maliciously shot and killed the dog while it was tied in the boy's backyard. The defendant, in response, claimed justification, asserting the dog had recently bitten both him and his young son. Id. While it appears undisputed the dog bit the defendant and his son, there was conflicting evidence regarding the severity of the wounds and whether the animal had been provoked. Id. at 415-416.

[7] This statute provides:

> Direct testimony as to market value is in the nature of opinion evidence. A witness need not be an expert or dealer in an article or property to testify as to its value if he or she has had an opportunity to form a reasoned opinion.

OCGA § 24-7-701 (b). We note that the Federal Rules of Evidence do not contain a provision similar to OCGA § 24-7-701 (b). However, as this statutory provision in Georgia's new evidence

15

436) (1932). Indeed, "[m]arket value is a question peculiarly for the jury, and a jury is not required to accept even uncontradicted opinions as to market value." Childs v. Logan Motor Co., 103 Ga. App. 633, 639 (120 SE2d 138) (1961). Instead, in determining the value of personal property in tort cases, jurors "have the right to consider the nature of the property involved, together with any other facts or circumstances properly within the knowledge of the jury which throws light upon the question, and by their verdict, may fix either a lower or higher value upon the property than that stated in the opinions and estimates of the witnesses." Hogan v. Olivera, 141 Ga. App. 399, 402-403 (233 SE2d 428) (1977) (finding award of $10,000 for water damage to plaintiff's real and personal property well within the range of estimated damages which could be determined from the evidence). See also Wood v. Garner, 156 Ga. App. 351, 352 (274 SE2d 737) (1980) (authorizing jury verdict placing value of antique china several hundred dollars higher than testimony of expert).

4. Although we find the Court of Appeals erred in applying an actual value to owner measure of damages in this case, we find no error in that court's

---

code is substantially similar to the pre-existing statute, former OCGA § 24-9-66, which it replaced, we give OCGA § 24-7-701 (b) the same meaning as former OCGA § 24-9-66. See Bradshaw v. State, 296 Ga. 650, 654 (769 SE2d 892) (2015).

16

determination that Georgia precedent does not allow for the recovery of damages based on the sentimental value of personal property to its owner. See Monyak, 331 Ga. App. at 815 ("[D]amages for the intrinsic value of the dog are not recoverable."). Instead, we agree with those courts which have held that the unique human-animal bond, while cherished, is beyond legal measure. See Shera, 723 SE2d at 357 ("[T]he sentimental bond between a human and his or her pet companion can neither be quantified in monetary terms or compensated for under our current law."); Strickland, 397 SW3d at 197-198 (refusing to permit non-economic damages rooted in relational attachment).

This does not mean, however, that all qualitative evidence regarding the plaintiffs' dog is inadmissible. As in Chalker, we see no reason why opinion evidence, both qualitative and quantitative, of an animal's particular attributes – e.g., breed, age, training, temperament, and use – should be any less admissible than similar evidence offered in describing the value of other types of personal property. See Chalker, 73 Ga. App. at 417. See also Sun Ins. Co. of New York v. League, 112 Ga. App. 625, 626 (145 SE2d 768) (1965) (noting evidence indicative of the value of a car after a collision included photographs of the car, itemized estimates of the cost of repairs and the testimony of

17

automobile repairmen); Sapp v. Howe, 79 Ga. App. 1 (1) (52 SE2d 571) (1949) (allowing as proof of its value evidence of a truck's general condition, its use by the plaintiff and state of repair, purchase price, length of time owned by the plaintiff and the mileage he put on it). Compare Sammons v. Copeland, 85 Ga. App. 318, 322 (69 SE2d 617) (1952) (holding that where record lacked descriptive evidence of numerous items of personal property from which the jury could draw an intelligent conclusion of value, the jury's subsequent award of damages was unauthorized). The key is ensuring that such evidence relates to the value of the dog in a fair market, not the value of the dog solely to its owner.

5. As previously stated in Division 2 of this opinion, in addition to recovering the fair market value of their deceased dog plus interest, the Monyaks would be entitled to recover the reasonable veterinary and other expenses they reasonably incurred in trying to save her. Whether the veterinary costs and other expenses incurred by a pet owner in obtaining treatment for an animal negligently injured by another are reasonable will depend on the facts of each case. As observed by the Massachusetts Appeals Court in a case involving tortious injury to a dog,

[a]mong the factors to be considered are the type of animal involved, the severity of its injuries, the purchase and/or replacement price of the animal, its age and special traits or skills, its income-earning potential, whether it was maintained as part of the owner's household, the likelihood of success of the medical procedures employed, and whether the medical procedures involved are typical and customary to treat the injuries at issue.

Irwin v. Degtiarov, 8 NE3d 296, 301 (Mass. App. Ct. 2014).

Of course, determining the reasonableness of medical treatment and the reasonableness of its cost is a function for the factfinder and well within the capability of jurors who routinely are asked to ascertain the appropriate value of professional services in other types of cases. See Reserve Life Ins. Co. v. Gay, 214 Ga. 2, 3 (102 SE2d 492) (1958) (holding jurors are not bound by expert opinion to determine the value of legal services rendered, but may exercise their own judgement on the subject, taking into consideration the nature of the services, the time required to perform them, and all attending circumstances); Georgia Ry. & Electric Co. v. Tompkins, 138 Ga. 596, 603 (75 SE 664) (1912) (allowing jurors to determine the reasonableness of a physician's bills in a personal injury case). The burden of establishing the reasonableness of any medical treatment provided in light of the animal's injuries, condition and prognosis, as well as the reasonableness of the cost of

19

that treatment considering factors such as the nature of the services rendered, the time required to perform them, and all attending circumstances rests with the animal's owner. See City of Savannah v. Waldner, 49 Ga. 316, 324 (1873). See generally Allen v. Spiker, 301 Ga. App. 893, 896 (689 SE2d 326) (2009).

6. For the foregoing reasons, we reverse the Court of Appeals' decision in this case to the extent it holds that the proper measure of damages recoverable in tort cases involving the negligent injury to or death of an animal is one based on the actual value of the animal to its owner. We affirm, however, that portion of the Court of Appeals' decision holding that damages representing an animal's sentimental value to its owner are not recoverable, although we find that descriptive evidence, both qualitative and quantitative, is admissible to establish an animal's attributes for determining its fair market value, as well as for determining the reasonableness of an owner's expenditures for veterinary expenses. Accordingly, we remand this case to the Court of Appeals for further proceedings consistent with this opinion.

Judgment affirmed in part, reversed in part, and case remanded. All the Justices concur.