**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 31, 2018**

# In the Court of Appeals of Georgia

A17A1526. WEINSTEIN v. HOLMES et al.

MILLER, Presiding Judge.

This case involves the availability of punitive damages for negligence after Laurie Weinstein was injured by dogs owned by Courtney and David Holmes when those dogs allegedly attacked Teddy, a Yorkshire Terrier, Weinstein was walking.[1] The Holmeses moved for partial summary judgment on the issue of punitive damages, arguing that there was no evidence that they had knowledge of the risk of an attack because there were no prior instances that would have put them on notice. The trial court granted the motion for partial summary judgment, finding that a single prior incident was insufficient to establish an entire want of care or conscious indifference

---

[1] The appeal in the companion case between Teddy's owners and the Holmeses has been withdrawn.

to the consequences. This appeal followed, and we now reverse the trial court's order on the motion for partial summary judgment because we find that there was sufficient evidence for the issue of punitive damages to go to a jury.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations omitted.) *Custer v. Coward*, 293 Ga. App. 316, 317 (667 SE2d 135) (2008).

So viewed, the evidence shows that, on May 9, 2013, Weinstein walked her son and daughter-in-law's Yorkshire Terrier, Teddy, to their neighborhood dog park. At the time, Teddy was about eleven years old and weighed slightly over five pounds. As they approached the dog park, Weinstein noticed Courtney Holmes with her two larger dogs – a 75 pound Rhodesian Ridgeback named Lacy and a 40 pound beagle/lab mix named Callie – already within the gated area of the park. Weinstein asked Holmes if she and her dogs would be leaving soon, and Holmes shrugged her

2

shoulders. A few moments later, Holmes put leashes on her dogs and, as she opened the gate to the park, the dogs charged out.

Weinstein was standing a "good distance" away from the gate because she did not want to be near the dogs as they came out. As the two dogs charged out of the park, Holmes had trouble holding on to them and she lost her grasp on Lacy's leash. Weinstein tried to pick Teddy up as the three dogs were running around, but either the larger dogs knocked her down or she became tangled in their leashes and fell. When she stood, she noticed bruises and a paw mark on her arm, and that Teddy's eye was bleeding.

Weinstein asked a neighbor to call 911 and then went to find her son. By that time, the "damage was already done," and Teddy was "half gone." An animal control officer came to the scene, pronounced Teddy dead, and gave Holmes two citations, one for having a dog off leash and another for dog biting dog.[2] Although the animal control officer had already pronounced Teddy dead, the Weinsteins took Teddy to the vet that evening, and the veterinarian noted that Teddy had a broken neck, puncture wounds on his face, and had been bleeding from his left eye, mouth, and nose.

---

[2] Holmes paid the off-leash citation. The other citation was dismissed.

Weinstein submitted evidence that another neighbor had been involved in a prior incident with Holmes's dogs. On that day, Holmes lost control of her dogs and they charged aggressively at a woman walking her dog and also started to attack that dog. The neighbor restrained Holmes's dogs, and he believed that they would have injured the other dog had he not intervened. The neighbor's wife stated that she avoided Holmes when she saw Holmes walking the dogs because she did not think Holmes could control the dogs, as they often pulled Holmes as Holmes held the leashes.

Holmes denied that her dogs injured Teddy and testified that Weinstein fell on Teddy when she got tangled in the leashes as the dogs chased each other. Holmes further denied any previous incidents with either dog and stated that she never had trouble controlling her dogs when she walked them. Additionally, Holmes stated that "unless [Lacy] saw a dog that she wanted to play with, [Lacy] was usually very calm and not aggressive." She admitted, however, that she knew her dogs liked to play with other dogs and that, on the day Teddy died, her dogs had not had the opportunity to get their energy out before Weinstein asked them to leave the park. She acknowledged that, during the incident, Callie was pulling her, and she was unable to control Lacy.

The trial court granted summary judgment to Holmes on the issue of punitive damages, finding that the single other incident was insufficient to establish that the Holmeses acted with an entire want of care or conscious indifference to the consequences of their actions. The trial court noted that the previous incident had not resulted in an injury, and thus the Holmeses had no knowledge of the risk to Weinstein.

In her sole enumeration of error, Weinstein argues that the trial court erred in granting summary judgment on the issue of punitive damages because the conflicting evidence in the record warranted jury consideration. We agree.

It is well-settled that

> a dog owner is liable for damages only if the owner has knowledge that the dog has the propensity to do the particular act . . . which caused injury to the complaining party. A plaintiff must show that the dog had the propensity to do the act and that the owner had knowledge of that propensity. Although this traditionally has been described as Georgia's "first bite rule," the rule does not literally require a first bite. Instead, the true test of liability is the owner's superior knowledge of [her] dog's temperament.

(Citations, punctuation, and footnotes omitted.) *Raith v. Blanchard*, 271 Ga. App. 723, 724 (1) (611 SE2d 75) (2005).

To obtain punitive damages in such cases, however, the plaintiff must show "by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). "Whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question." (Citation omitted.) *Weller v. Blake*, 315 Ga. App. 214, 219-220 (3) (a) (726 SE2d 698) (2012).

The issue, therefore, is whether Holmes had knowledge of her dogs' propensity to charge uncontrollably and aggressively towards other dogs and people. Further, to permit the issue of punitive damages to reach the jury, we need only conclude that there is a genuine issue of fact as to whether Holmes's actions showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." *Powell v. Ferreira*, 198 Ga. App. 465 (402 SE2d 85) (1991).

"[T]o infer the requisite knowledge, there must be at least one incident that would cause a prudent person to anticipate the actual incident that caused the injury." (Citation and punctuation omitted.) *Steagald v. Eason*, 300 Ga. 717, 720 (797 SE2d 838) (2017). Nevertheless, Weinstein need not show that Holmes was aware of an

identical incident, "as long as there is an incident or incidents which would put a prudent [woman] on notice to anticipate the event which occurred." (Citation and punctuation omitted.) *Torrance v. Brennan*, 209 Ga. App. 65, 67-68 (2) (432 SE2d 658) (1993). In other words, the prior incident need not be identical as long as it puts the owner on notice of the risk of an actual attack. *Steagald*, supra, 300 Ga. at 721. Thus, "when the evidence shows that an owner or keeper knows of such an attempted [attack] . . . it may well be sufficient to establish knowledge of a propensity to [attack]." (Citation omitted.) Id.

Here, the evidence shows that Holmes was walking two dogs that collectively weighed almost as much as she did, and on the day of the attack, she lost control of Lacy's leash. Holmes admitted that she did not want her dogs to interact with Teddy, and that the dogs still had a lot of energy as they left the gated area of the park. And despite Holmes's testimony that she was able to control the dogs when she walked them, there was evidence from Holmes's neighbors that there had been a prior instance in which Holmes lost control of her dogs, which allowed the dogs to act aggressively and attack another dog. That neighbor further testified that he believed that it was only his intervention that prevented an injury on that occasion. Moreover,

Holmes admitted that Lacy was not usually aggressive "*unless [Lacy] saw a dog that she wanted to play with.*"

We must construe the facts in the light most favorable to Weinstein, as the non-movant, and these conflicts in the evidence create a jury question about Holmes's knowledge of the risk her dogs posed to Weinstein. See *Osowski v. Smith*, 262 Ga. App. 538, 540 (1) (586 SE2d 71) (2003); *Service Merchandise, Inc. v. Jackson*, 221 Ga. App. 897, 898 (1) (473 SE2d 209) (1996) ("It is the jury, not the court, which is the factfinding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts."). Contrary to the trial court's finding, the fact that the prior incident did not cause an actual injury is not dispositive. Rather, all that is required is that the prior incident put the owners on notice that an attack could occur. *Steagald*, supra, 300 Ga. at 721. The evidence here satisfied this requirement.

Holmes's knowledge of the risk is not the end of the inquiry, however. The jury is also tasked with determining whether the actions Holmes took on the day of the incident showed the requisite want of care or conscious indifference to the consequences that would warrant punitive damages. *Weller*, supra, 315 Ga. App. at 219 (3) (a).

8

We have not often addressed the availability of punitive damages in aggressive dog cases. In *Parsons v. Ponder*, 161 Ga. App. 723 (288 SE2d 751) (1982), this Court concluded that the issue of punitive damages was for the jury to decide where there was more than one prior incident, the neighbors testified to a prior attack, and the owner had been asked to keep the dog locked up. 161 Ga. App. at 724 (2).

Here, there was evidence that Holmes weighed little more than the combined weight of her dogs, on at least one other occasion she had lost control of both dogs and that on the prior occasion a neighbor had to intervene to prevent injury to another person. Additionally, Holmes knew that Lacy still had a lot of energy when they left the dog park and she testified that Lacy was "usually calm and not aggressive" "*unless* [Lacy] saw a dog that she wanted to play with." Nevertheless, Holmes attempted to leave the dog park with both dogs while Teddy was present. On these facts, it is for the jury to determine whether Holmes acted with "that entire want of care which would raise the presumption of conscious indifference to consequences."[3] OCGA § 51-12-5.1 (b). Compare *Powell*, supra, 198 Ga. App. at 466 (summary

---

[3] We express no opinion as to what steps Holmes could – or should – have taken. Nor do we imply that punitive damages should be awarded in this case. That determination is solely within the province of the jury after weighing the evidence and considering the credibility of the witnesses.

judgment on punitive damages issue warranted where there was evidence that the owners took appropriate precautions to keep the dog contained and to keep the dog separated when a non-family member came to the house, and the evidence showed that the injury resulted when the owners were unaware a non-family member was in the house).

The trial court relied on two cases to conclude that the Holmes's were entitled to summary judgment on the issue of punitive damages, but neither case supports the trial court's conclusion. In the first case, *Barking Hound Village v. Monyak*, 299 Ga. 144 (787 SE2d 191) (2016), the parties had not appealed from the order denying summary judgment on punitive damages and the Supreme Court of Georgia expressly did not address that issue. 299 Ga. at 146 n. 3; *Barking Hound Village v. Monyak*, 339 Ga. App. 685, 686 n. 3 (794 SE2d 664) (2016).

Second, the trial court distinguished *Parsons*, supra, 161 Ga. App. at 724 (2), however, we do not find *Parsons* distinguishable from the present case. Indeed, *Parsons* requires the opposite conclusion from the trial court's finding. Holmes's own testimony of her knowledge that Lacy was full of energy and liked to play with other dogs, coupled with the neighbors' affidavits reflecting a prior similar instance of

aggressive behavior that could have resulted in an injury creates a question for the jury as to punitive damages under *Parsons*.

Accordingly, the trial court erred in granting summary judgment to the Holmeses on the issue of punitive damages. We therefore reverse the trial court's order and remand the case for further proceedings.

*Judgment reversed and case remanded. Doyle, P. J., and Reese, J., concur*.