**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**



SUPREME COURT OF GEORGIA
Case No. S23G1162

October 31, 2024

# WHITAKER FARMS, LLC v. FITZGERALD FRUIT FARMS, LLC.

Upon consideration, the deadline for a motion for reconsideration in this case has been revised. It is ordered that a motion for reconsideration, if any, must be filed no later than **4:30 pm on Wednesday, November 6, 2024**.

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

, Clerk

In the Supreme Court of Georgia

Decided: October 31, 2024

S23G1162. WHITAKER FARMS, LLC v. FITZGERALD FRUIT FARMS, LLC.

BOGGS, Chief Justice.

Fitzgerald Fruit Farms, LLC, which leased land owned by Whitaker Farms, LLC for a peach orchard, sued Whitaker Farms for damages after being locked out of the leased premises. A jury awarded Fitzgerald Farms compensatory damages. In the first appearance of this case before the Court of Appeals, that court affirmed in part, but reversed the trial court's ruling that Fitzgerald Farms could not seek punitive damages. See *Whitaker Farms, LLC v. Fitzgerald Fruit Farms, LLC*, 347 Ga. App. 381 (819 SE2d 666) (2018) ("*Whitaker I*"). On remand at a trial focused on punitive damages, a second jury awarded punitive damages to Fitzgerald Farms. The Court of Appeals again affirmed and held, in relevant

2

part, that statements made during a settlement negotiation by Curtis Whitaker, Whitaker Farms's Chief Operating Officer, to Sean Lennon, Fitzgerald Farms's owner, were properly admitted under OCGA § 24-4-408 ("Rule 408"), which governs the admissibility of settlement offers and statements made in settlement negotiations. See *Whitaker Farms, LLC v. Fitzgerald Fruit Farms, LLC*, 368 Ga. App. 563 (2023) ("*Whitaker II*"). We granted certiorari to review that ruling. We now vacate the Court of Appeals's judgment, and as explained further below, determine that the statements at issue were inadmissible. Furthermore, we remand the case to the Court of Appeals for a determination as to whether the admission of the statements was harmful such that a new trial on punitive damages is required.

1. The relevant facts and procedural background, as set forth in *Whitaker I* and *II*, are as follows. In 2015, Whitaker Farms purchased a 290-acre peach farm from Carroll Farms. At the time of the sale, Fitzgerald Farms grew peaches on a 20-acre tract leased from Carroll Farms. Carroll Farms did not disclose the existence of

3

the lease to Whitaker Farms prior to the sale. After Whitaker Farms purchased the farm, it hired Hynes Barnes, one of the owners of Carroll Farms, to manage the property. Neither Barnes nor Carroll Farms informed Lennon or Fitzgerald Farms that the property had been sold.

In April 2016, Whitaker learned that Lennon had "pushed up" some trees on Whitaker Farms's property, and Whitaker reported the incident to the local sheriff. A sheriff's deputy told Whitaker that the issue was a civil matter, explaining the deputy's understanding that Lennon had an ownership interest in the damaged trees. On August 4, 2016, Fitzgerald Farms's workers were harvesting peaches, and as one of the workers left the orchard with a load of peaches, he saw Barnes driving away from one of the gates and discovered that the access gates had been locked. When the employee realized that the workers were locked inside the orchard, he texted Lennon, who texted Barnes and asked him to unlock the gate. Barnes responded that Lennon needed to call Whitaker because Whitaker owned the property now. Lennon called and left a

4

voicemail for Whitaker, but Whitaker did not return the call. After getting permission from a superior court judge, the sheriff cut the lock, allowing the workers to depart. The following day, Barnes relocked the gates, preventing Fitzgerald Farms's workers from accessing the property to harvest its peaches.

On August 5, 2016, Fitzgerald Farms sought a temporary restraining order against Barnes to gain access to the orchard so that it could complete the peach harvest. Four days later, Whitaker executed an application for a criminal arrest warrant for Lennon, seeking to keep Lennon off the property by having him arrested. A judge granted the TRO a week after it had been filed, but by that time, the crop was ruined. Shortly thereafter, Fitzgerald Farms brought the underlying action for trespass against Whitaker Farms, seeking compensatory and punitive damages, as well as attorney fees under OCGA § 13-6-11. Whitaker Farms filed a counterclaim seeking damages for conversion. A jury found in favor of Fitzgerald Farms, awarding $150,000 in actual damages for trespass and lost profits and $400,000 in attorney fees. The jury also rendered a

verdict in favor of Fitzgerald Farms on Whitaker Farms's counterclaims.

Both parties appealed, and the Court of Appeals affirmed in part and reversed in part, holding that the trial court erred in not submitting the issue of punitive damages to the jury. See *Whitaker I,* 347 Ga. App. at 389. On remand, the trial court conducted a second jury trial on the issue of punitive damages. Prior to the first phase of that punitive-damages trial,[1] Whitaker Farms filed a motion in limine to exclude certain statements Whitaker made to Lennon at a settlement conference that occurred prior to the first trial. Whitaker Farms argued that the statements were inadmissible under OCGA § 24-4-408 (b) because the discussion was not relevant to Whitaker's intent at the time the gates were locked and were unduly prejudicial.[2] The trial court denied the motion, and at the first

---

[1] See OCGA § 51-12-5.1 (d) (providing that in the first phase of a trial on punitive damages, a factfinder decides *whether* to award punitive damages, and if the factfinder decides to do so, a second phase of the trial begins on the *amount* of punitive damages).

[2] Whitaker Farms also argued that the trial court should have excluded the statements under OCGA § 24-4-403, but the trial court declined to do so.

phase, Lennon testified as follows about the discussion with Whitaker at the settlement conference:

> You know, the conversation started cordial and it turned to – it turned to being told that – you know, we talked about the criminal arrest warrant, that it's all within [Whitaker's] right to bring that up again, that I had family to think about. He told me that he thrived off this type of litigation. He had told me that he had been in something like this before and that person went bankrupt, that I needed to consider all of this. . . . And he also made the comment that I had pissed him off, that he was going to make an example out of me. I don't know if "pissed off" was the exact terminology. I had made him very angry and he was going to make an example out of me for what I had done.

Whitaker, on the other hand, testified that Lennon's account of the conversation was "unequivocally not true" and that they had reached a tentative agreement for Lennon to pay him annually for the orchard, but the deal never came to fruition. The jury determined that Fitzgerald Farms was entitled to punitive damages, and in the second phase, the jury set the amount of punitive

---

The Court of Appeals determined the trial court did not abuse its discretion with respect to this ruling, see *Whitaker II*, 368 Ga. App. at 567-568, and Whitaker Farms has not challenged that aspect of the Court of Appeals's opinion.

damages at $500,000. Whitaker Farms again appealed, arguing that the trial court abused its discretion in admitting into evidence the statements Whitaker made in the settlement conference. The Court of Appeals, however, affirmed.

The Court of Appeals noted that Rule 408 (b) states: "Evidence of conduct or statements made in compromise negotiations or mediation shall not be admissible." However, the Court of Appeals did not address whether Rule 408 (b) required the exclusion of the statements at issue here. Instead, the Court of Appeals appeared to assume that Rule 408 (c) would permit the admission of evidence of statements and conduct made in compromise negotiations in certain circumstances. Rule 408 (c) states:

> This Code section shall not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations or mediation. This Code section shall not require exclusion of evidence offered for another purpose, including, but not limited to, proving bias or prejudice of a witness, negating a contention of undue delay or abuse of process, or proving an effort to obstruct a criminal investigation or prosecution.

The Court of Appeals held that subsection (c) "forbids admission of

8

evidence only when it is offered to prove liability for or invalidity of the claim or its amount." *Whitaker II*, 368 Ga. App. at 566 (quoting *Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F3d 682, 689 (7th Cir. 2005)). It explained that "the trial court allowed the admission of [Whitaker's] statements . . . for the limited purpose of proving [his] intent and state of mind" and were not "used against him to prove his liability; rather, his demeanor was used as evidence of his state of mind toward Lennon, which was relevant to the jury's consideration of whether to award punitive damages." Id. at 567. Accordingly, the Court of Appeals concluded that the trial court did not abuse its discretion in admitting the statements during the first phase of the punitive-damages trial in which the jury was determining whether Fitzgerald Farms was entitled to an award of punitive damages. See id.

We granted certiorari to address the following questions:

1. Under OCGA § 24-4-408, is "evidence of conduct or statements made in compromise negotiations or mediation" always inadmissible, see OCGA § 24-4-408 (b), or is it admissible under the exception set out in OCGA § 24-4-408 (c) when "offered for another purpose?" See also OCGA § 24-

9

4-408 (c) ("This Code section shall not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations or mediation.").

2. If the exception set out in OCGA § 24-4-408 (c) applies to conduct or statements made in compromise negotiations or mediation, does that exception make such conduct or statements admissible for the purpose of showing a party's "state of mind" toward the plaintiff to help establish that punitive damages should be awarded? See OCGA § 24-4-408 (a), (c).

As set forth below, we resolve this case by rejecting the Court of Appeals's application of Rule 408 (c), and therefore we answer the second question and need not address the first question posed.

2. (a) Rule 408 was enacted in 2011 as part of the adoption of the current Evidence Code and became effective January 1, 2013. See Ga. L. 2011, pp. 99, 107-108, 214, §§ 2, 101. Rule 408 says, in full:

(a) Except as provided in Code Section 9-11-68,[3] evidence of:

(1) Furnishing, offering, or promising to furnish; or

---

[3] OCGA § 9-11-68 sets forth a procedure, under certain circumstances, for a party to recover attorney fees and litigation expenses when the opposing party rejects a settlement offer in a tort case.

10

(2) Accepting, offering, or promising to accept

a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount shall not be admissible to prove liability for or invalidity of any claim or its amount.

(b) Evidence of conduct or statements made in compromise negotiations or mediation shall not be admissible.

(c) This Code section shall not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations or mediation. This Code section shall not require exclusion of evidence offered for another purpose, including, but not limited to, proving bias or prejudice of a witness, negating a contention of undue delay or abuse of process, or proving an effort to obstruct a criminal investigation or prosecution.

The parties assert, and we agree, that Rule 408 is modeled after the

1975 version of Federal Rule of Evidence 408,[4] rather than the 2006

---

[4] Federal Rule of Evidence 408 (1975) provided:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.

11

version,[5] which was in effect at the time Rule 408 was adopted.[6]

---

This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[5] Federal Rule of Evidence 408 (2006) provided:

(a) Prohibited Uses.—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or a contradiction:

> (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted Uses.—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

[6] After Rule 408 was passed by the Georgia House of Representatives on February 28, 2011, and by the Georgia Senate on April 14, 2011, see HB 24, Act 52, Ga. L. 2011, p. 99, 107-108 § 2, Federal Rule of Evidence 408 was amended April 26, 2011, with an effective date of December 1, 2011. See Fed. R. Evid. 408 advisory committee notes on 2011 amendments. The federal 2011 amendment was intended to be stylistic only and not to change the result of any ruling on the admissibility of evidence. See id. See also *Davis v. State*, 299 Ga. 180, 185 n.5 (787 SE2d 221) (2016) (noting effect of 2011 amendment to Federal Rule of Evidence 615). In *Sauder v. State*, 318 Ga. 791, 799 n.12 (901 SE2d 124) (2024), we stated that Rule 408 (a) is materially identical to Federal Rule of Evidence 408 (a) (1) (2011), but we did not consider how Rules 408 (b) and (c) compared to Federal Rule of Evidence 408.

We also note that Rule 408 (c) is virtually identical to a provision in both the 1975 and 2006 versions of Federal Rule of Evidence 408. Because Rule 408 (c) is materially identical to a provision of former versions of Federal Rule of Evidence 408, we agree that the Court of Appeals properly looked to federal appellate courts' interpretation of the relevant provisions for guidance in interpreting the rule. See *State v. Almanza*, 304 Ga. 553, 556 (820 SE2d 1) (2018) ("If a rule in the new Evidence Code is materially identical to a Federal Rule of Evidence, we look to federal case law." (cleaned up)).

(b) For purposes of this appeal, the parties agree that the statements Whitaker made to Lennon during the settlement conference are "statements made in compromise negotiations." As noted above, under Rule 408 (b) "evidence of conduct or statements made in compromise negotiations or mediation shall not be admissible." However, Rule 408 (c) provides that "[t]his Code section shall not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of

compromise negotiations or mediation." Subsection (c) further provides that "[t]his Code section shall not require exclusion of evidence offered for another purpose, including, but not limited to" a non-exhaustive list of enumerated purposes.

The parties disagree about the proper interpretation of subsections (b) and (c). Whitaker Farms contends that evidence of statements made in settlement negotiations is always inadmissible under the plain language of Rule 408 (b). It reasons that subsection (c)'s exception does not cover evidence of conduct or statements made in compromise negotiations, given that subsection (b) renders such evidence inadmissible. Instead, Whitaker Farms reads subsection (c)'s exception to address only documents or other evidence "presented in the course of" such negotiations. Whitaker Farms also argues that even if evidence of statements made in compromise negotiations is admissible for "another purpose" under Rule 408 (c), such evidence cannot be used to show a party's "state of mind" to establish punitive damages.

Fitzgerald Farms, on the other hand, asserts that the Court of

Appeals correctly applied the exception in Rule 408 (c) to allow evidence of Whitaker's statement in the settlement conference to be admitted "for another purpose." According to Fitzgerald Farms, the phrase "another purpose" is a reference to subsection (a), which forbids introducing evidence of settlement offers or acceptances "to prove liability for or invalidity of any claim or its amount." Thus, in its view, conduct or statements made in compromise negotiations may be admitted for "another purpose" other than to prove "liability for or invalidity of any claim or its amount" — the purpose that is forbidden under subsection (a). It thus contends that Whitaker's statements were properly admitted because, as the Court of Appeals stated, they were used as evidence of Whitaker's state of mind or demeanor, not to prove his liability.

We need not resolve the question of whether Rule 408 (b) provides a categorical exclusion of all evidence of conduct or statements made in compromise negotiations or whether such statements may be admitted under the exception set out in Rule 408 (c). As explained below, even assuming that Fitzgerald Farms is

15

correct that Rule 408 does not require exclusion of statements made during compromise negotiations if offered for a purpose other than proving "liability for or invalidity of any claim or its amount," under Rule 408 (a), the evidence at issue here should have been excluded because it was offered for the purpose of proving liability for Whitaker Farms's liability for punitive damages, which we conclude constitutes a "claim" for purposes of Rule 408 (a).

(c)    We first address the Court of Appeals's rationale. Assuming, without deciding, that the Court of Appeals and Fitzgerald Farms are correct that statements made in compromise negotiations may be admitted for a purpose other than proving "liability for or invalidity of any claim or its amount," see Rule 408 (a), the question here is whether introducing such statements to prove a party's entitlement to punitive damages is an attempt to "prove liability for or invalidity of any claim or its amount," and in particular, whether a claim for punitive damages is a "claim" within the meaning of the statute. If so, the question then becomes whether the evidence here was offered for the forbidden purpose of proving

16

liability for punitive damages or whether it was offered for a "another purpose," see Rule 408 (c), such as the permissible purpose found by the Court of Appeals — "state of mind." *Whitaker II*, 368 Ga. App. at 567.

We turn first to the question of whether the word "claim" in Rule 408 (a) encompasses a request for punitive damages. As noted above, "[i]f a rule in the new Evidence Code is materially identical to a Federal Rule of Evidence, we look to federal case law." *Almanza*, 304 Ga. at 556. The language of our Rule 408 (a) that is relevant here — precluding admission of settlement evidence "to prove liability for or invalidity of any claim or its amount" — is virtually identical to language in Federal Rule of Evidence 408 (a), and therefore, we look to federal case law for guidance in determining whether Fitzgerald Farms's request for punitive damages constituted a "claim" under Rule 408, and if so, whether the admission of Whitaker's statements in the first phase of the punitive-damages trial was offered "to prove liability for or invalidity of any claim or its amount." However, our review of federal

17

case law reveals that it does not provide a singular meaning of the term "claim" in the context of proving "liability for or invalidity" of the claim. Nor does it definitively answer whether a request for punitive damages is a "claim." Instead, federal cases have focused on whether Federal Rule of Evidence 408 requires exclusion of settlement evidence directly connected to the legal claim at issue in the current case or whether the rule extends more broadly to settlement discussions about prior legal claims that are not at issue in the current case. Compare *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F3d 284, 296-297 (5th Cir. 2010) (surveying case law, noting that "courts vary widely in their understanding of the term [claim]" in the context of evidence offered to prove liability for or invalidity of a claim, and noting that the majority rule is that "the dispute being settled need not be the one being tried in the case where the settlement is being offered in order for Rule 408 to bar its admission" (cleaned up)), with *Wine & Canvas Dev., LLC v. Muylle*, 868 F3d 534, 541 (7th Cir. 2017) (stating that "settlement discussions concerning a specific claim are excluded from evidence

18

to prove liability on *that* claim, not on others" (emphasis in original)), and *Vulcan Hart Corp. v. NLRB*, 718 F2d 269, 277 (8th Cir. 1983) (holding that settlement evidence is excluded "only if such evidence is offered to prove liability for or invalidity of the claim under negotiation"). See also 23 Wright & Miller, Federal Practice & Procedure § 5303 (2d ed. June 2024 update) (noting that the Advisory Committee Notes to the Federal Rules of Evidence offered no guidance on the scope of the word "claim"). But the focus of the federal cases on the general question of whether Federal Rule of Evidence 408 is to be read narrowly or broadly is not helpful in providing guidance on the specific meaning of the term "claim."

(d) Because federal case law does not provide a definitive answer to the question presented here — whether a request for punitive damages is a "claim" such that settlement evidence is not admissible to prove liability for that claim or its amount — we look to how punitive damages are treated under Georgia law to guide our analysis.

The term "claim" is often used in legal contexts to refer to "[a]

19

demand for money, property, or a legal remedy to which one asserts a right[.]" Black's Law Dictionary (10th ed. 2014). Our legislature has likewise, in various contexts, defined "claim" as "any request or demand . . . for money or property." See OCGA §§ 23-3-120, OCGA § 49-4-168. Moreover, the statute authorizing the recovery of punitive damages requires that an "award of punitive damages must be specifically prayed for." OCGA § 51-12-5.1 (d) (1). See also Black's Law Dictionary (10th ed. 2014) (defining "prayer for relief," which is "[o]ften shortened to prayer," as a "request for specific relief or damages"). Additionally, we have long and consistently referred to a request to recover punitive damages as a "claim" in our case law. See, e.g., *Taylor v. Devereux Found., Inc.*, 316 Ga. 44, 52 (885 SE2d 671) (2023) (one of multiple characterizations of plaintiff's demand for punitive damages as a "claim"); *Barking Hound Village, LLC v. Monyak*, 299 Ga. 144, 145-146 & n.3 (787 SE2d 191) (2016) (describing plaintiffs' claims as including "punitive damages claims"); *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420 (627 SE2d 549) (2006) (discussing plaintiffs' "punitive damages

20

claim"); *Bragg v. Gavin*, 234 Ga. 70, 70 (214 SE2d 532) (1975) (noting appellant "sought both compensatory and punitive damages" and describing the factual basis for "the claim for punitive damages" as fraud in inducing plaintiff to purchase Irish Setter dogs); *Georgia Railroad & Banking Co. v. Eskew*, 86 Ga. 641, 641 (12 SE 1061) (1891) (discussing evidence relevant to a "claim for punitive damages").

We also note that the statutory language precludes the use of settlement evidence "to prove liability for . . . any claim *or its amount*." Rule 408 (a) (emphasis added). The description of "claim" as having "an amount" presupposes that a "claim" can be a request for monetary relief, which has an "amount," as opposed to only a general claim of liability for the underlying conduct. See also OCGA § 9-11-68 (a) (6) (for purposes of offer-of-settlement statute, offer to settle a tort claim must "[s]tate with particularity the amount proposed to settle a claim for punitive damages, if any").

Finally, "liability" may be used in the sense of "[a] financial or pecuniary obligation in a specified amount[.]" Black's Law

21

Dictionary (10th ed. 2014). Given the statutory reference to proving "liability for . . . any claim or its amount," Rule 408 (a), the term "liability" is broad enough to encompass a defendant's pecuniary obligation. See *Lathrop v. Deal*, 301 Ga. 408, 442 (801 SE2d 867) (2017) (in construing state constitutional provision that includes the term "liability," noting that it "often refers to a financial or pecuniary obligation" and citing Black's Law Dictionary (cleaned up)).

Fitzgerald Farms's argument about the meaning of "claim" relies on federal cases, and it argues that the evidence was properly admitted here because a punitive damages claim is a derivative claim, as opposed to the primary claim of trespassing.[7]

---

[7] Fitzgerald Farms also argues that the Court of Appeals's judgment is correct for the alternative reason that Whitaker's behavior was potentially criminal or tortious such that Whitaker Farms could not claim the protection of Rule 408. See, e.g., *Chemtall Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1410 (S.D. Ga. 1998) ("The Court has no difficulty holding that, where a party's overriding purpose in advancing a 'settlement' communication is not to work a settlement, but instead an outright fraud, such misuse estops him from invoking the evidentiary privilege."). However, this issue does not fall within the scope of the questions that we posed in granting the petition for certiorari, and we do not address it. See Supreme Court Rule 45.

However, the federal cases upon which Fitzgerald Farms relies address the more general question about whether Federal Rule of Evidence 408 requires exclusion of settlement evidence when the negotiations only related directly to the legal claim being litigated. For example, *Zurich* involved a letter written by an insured to its insurer to settle a coverage dispute under an insurance policy, and the admission of that letter into evidence in a different jurisdiction in a case involving a dispute between the insured and its insurer over the arbitrability of "deductible agreements," which were separate from the insurance policy. 417 F3d at 684-687. The *Zurich* court held that Federal Rule of Evidence 408 did not require exclusion of the letter where it was written in connection with settlement negotiations over a contract action on the primary liability policies, rather than in connection with the case being tried, which was a different case involving the question of arbitrability of separate deductible agreements. See id. at 690.

Additionally, *Bradbury v. Phillips Petroleum Co.*, 815 F2d 1356 (10th Cir. 1987), the primary case Fitzgerald Farms relies upon,

involved settlement evidence involving different legal claims than the claims being tried. In *Bradbury*, the plaintiffs sued Phillips Petroleum and a subsidiary for trespass, assault and battery, and outrageous conduct. See id. at 1359. The Tenth Circuit affirmed the trial court's admission of evidence of seven incidents for which Phillips had paid compensation to other individuals for Phillips's misconduct of a similar nature. See id. at 1362-1364. While the Tenth Circuit noted that "when the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers," it nevertheless concluded that the trial court did not abuse its discretion where the evidence was offered for the "other purposes" alleged by the plaintiffs — to demonstrate Phillips's "continuous course of reckless conduct and disregard of personal and property rights" and to negate Phillips's defense that its trespass across the plaintiffs' land was merely a mistake. Id. at 1363-1364.

Although these cases do not provide an answer to the question we are considering — whether a request for punitive damages is a "claim" within the meaning of Rule 408 — Fitzgerald Farms's

24

argument is that these cases show that Rule 408 requires exclusion of settlement evidence only when that evidence relates to the primary legal claim at issue and that the evidence here was properly admitted because a punitive damages claim is a derivative claim, not the primary claim. Certainly, an award of punitive damages cannot be made in the absence of an award of damages on the underlying tort claim. See OCGA § 51-12-5.1; *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 269 (416 SE2d 274) (1992) ("A claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach." (cleaned up)); *Nat'l Emergency Med. Servs., Inc. v. Smith*, 368 Ga. App. 18, 31 (889 SE2d 162) (2023) ("Awards of punitive damages and attorney fees are derivative of underlying claims; and where those claims fail, claims for punitive damages and attorney fees also fail." (cleaned up)). But the fact that punitive damages may only be awarded when damages are awarded on the underlying tort claim does not contradict the statutory analysis set forth above. And that analysis establishes that a request for punitive damages is a "claim" for which "liability" must be proven within the

25

context of Rule 408.

3. Having concluded that settlement evidence may not be offered to prove liability for a claim for punitive damages,[8] the next question is whether the admission of Whitaker's statements was used for the purpose of establishing Whitaker Farms's liability for punitive damages. Fitzgerald Farms argues that the evidence was used to show Whitaker's state of mind — not to prove liability for punitive damages. We disagree.

Here, the record is clear that the settlement conference occurred after Fitzgerald Farms sued Whitaker Farms for several claims, including one for punitive damages, and that the negotiations between Whitaker and Lennon were undertaken to settle all the claims raised in the lawsuit. Additionally, it is undisputed that the statements Whitaker made during the settlement conference — in which Whitaker allegedly asserted he could pursue an arrest warrant against Lennon and would "make an

---

[8] Again, we reiterate that we are not addressing whether settlement evidence is categorically excluded under Rule 408 (b).

26

example out of" him — were admitted into evidence during the first phase of the trial at which the jury was considering whether to award punitive damages.

In determining that Whitaker's statements were not used to prove Whitaker Farms's liability for punitive damages, the Court of Appeals stated that Whitaker's "demeanor was used as evidence of his state of mind toward Lennon, which was relevant to the jury's consideration of whether to award punitive damages." *Whitaker II*, 368 Ga. App. at 567. Additionally, it concluded that the trial court did not abuse its discretion in admitting the evidence where "the evidence at issue [was] relevant to [Whitaker's] intent as it related to the punitive damages standard." Id. at 568. However, a defendant's state of mind is an element of a punitive damages claim. See OCGA § 51-12-5.1 (b) (to recover punitive damages, plaintiff must prove that defendant's actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences"); *Taylor*, 316 Ga. at 55 (explaining that punitive

27

damages may be awarded "only if the defendant's actions showed a state of mind indicating some extra degree of culpability"). And evidence that is offered to prove an element of a claim is being offered to prove that claim. Thus, the Court of Appeals erred in its conclusion that the statements were offered to show Whitaker's state of mind but not to prove Whitaker Farms's liability for punitive damages.

To support its argument that the evidence here was admitted for "another purpose," Fitzgerald Farms relies on two federal cases. However, these cases are distinguishable. In *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F3d 109, 112-115 (2nd Cir. 2008), the Second Circuit, applying the 1975 version of Federal Rule of Evidence 408, held that the rule did not require exclusion of evidence that arose in settlement discussions over trademark infringement claims between the same parties that occurred years earlier where such evidence was relevant, and indeed, nearly essential to proving estoppel by acquiescence, an affirmative defense applicable in trademark infringement cases. See id. Similarly, in *Athey v.*

*Farmers Ins. Exchange*, 234 F3d 357, 362 (8th Cir. 2000), the Eighth Circuit held that Federal Rule of Evidence 408 did not require exclusion of testimony about settlement discussions over a breach of contract case where, under applicable state law, the testimony at issue was specifically admissible to prove a claim for bad faith refusal to settle. *PRL USA* and *Athey* thus involved unusual circumstances in which the exclusion of the settlement evidence would have precluded a party from establishing an essential element of a defense or where other substantive law specifically provided for the admission of the settlement evidence. Neither circumstance is present here. Exclusion of Whitaker's statements does not, by itself, preclude Fitzgerald Farms from establishing its claim for punitive damages. Compare *PRL USA*, 520 F3d at 112-115. Moreover, Georgia law does not otherwise specifically admit settlement negotiations as a means of proving culpability for punitive damages. Compare *Athey*, 234 F3d at 362.[9]

---

[9] Indeed, liability for punitive damages requires willful misconduct in the underlying transaction, and actions occurring during litigation do not

Because we conclude that Whitaker's statements were offered to show his intent and state of mind in his dealings with Lennon, the statements were necessarily offered to prove Whitaker Farms's liability for the punitive damages claim, and thus they were offered for a purpose forbidden by Rule 408 (a). Accordingly, we conclude that the Court of Appeals erred in holding that the trial court did not abuse its discretion in admitting Whitaker's statements from the settlement conference.

4. Because the Court of Appeals concluded that the evidence was admissible, it did not address whether the erroneous admission of the evidence was harmful such that a new trial on punitive damages is required. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."). We remand to the Court of Appeals for consideration of that issue.

*Judgment vacated and case remanded. All the Justices concur, except Peterson, P.J., disqualified.*

generally give rise to a punitive damages claim. See *Citizens & S. Nat'l Bank v. Bougas*, 245 Ga. 412, 413-414 (265 SE2d 562) (1980); *Kurtz v. Brown Shoe Co.*, 281 Ga. App. 706, 706 (637 SE2d 111) (2006).