**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 17, 2026**

# In the Court of Appeals of Georgia

A25A2015. SHADRIX et al. v. WILLINGHAM.

BROWN, Chief Judge.

Joseph D. Willingham ("Willingham") filed an action for fraud, deceit, and conspiracy against his ex-wife, Julie Shadrix ("Shadrix"), her husband, Jared Shadrix ("Jared"), and David Gray ("Gray"), whom Willingham learned was the biological father of one of the two children born during his marriage to Shadrix. The defendants filed motions for summary judgment on each of Willingham's claims. The trial court granted Jared's motion but denied summary judgment to Shadrix and Gray, finding that genuine issues of fact remained that precluded summary judgment. Shadrix and Gray filed an application for interlocutory appeal, which we granted, and this appeal followed.

"On appeal from a ruling on a motion for summary judgment, we conduct a de novo review, viewing the evidence in the record and all inferences therefrom in the light most favorable to the nonmoving party." *Cornejo v. Allen*, 367 Ga. App. 618, 618 (1) (887 SE2d 679) (2023) (citation and punctuation omitted). So viewed, Shadrix and Willingham married in October of 1994 and divorced in February 2002. During their marriage, two children were born, Taylor Willingham ("Taylor") and Ashton Willingham ("Ashton"). At the time of the divorce, Taylor was six years old and Ashton was three years old. In the Amended Consent Final Judgment and Decree entered in 2002, the parties were awarded joint legal custody of the two children, and Willingham was ordered to pay monthly child support for both children in the amount of $950, which included extraordinary medical expenses related to Ashton's treatment plan for a brain tumor diagnosed when Ashton was three years old, which payment would be reduced at the end of Ashton's treatment. Pursuant to modification actions filed by Willingham, the child support amount was reduced in January 2007, and again in February 2014, and Willingham continued to pay other child-related expenses.

In 2020, Ashton created a profile on Ancestry.com and discovered that Willingham was not her biological father. Ashton contacted her mother to inform her

of the results, and her mother admitted that she had sexual intercourse with defendant Gray one time in August 1997. At Ashton's urging, Willingham met with her, her boyfriend, and the Shadrixes in a parking lot to discuss the matter, and Willingham secretly recorded the meeting.[1] During that meeting, Shadrix told Willingham that she knew that Ashton could have been Gray's daughter, but she always believed she was Willingham's. She also disclosed that she told Jared when they married that she had sex with Gray while she was married to Willingham and it was possible that Gray was Ashton's father but she did not think he was. Also during the meeting, Willingham commented that when Ashton was three or four years old, he thought she looked exactly like Gray's children, but he never took any steps to investigate his suspicions.[2]

In December 2020, Willingham filed his complaint against the defendants, alleging fraud, deceit, and conspiracy to defraud, seeking damages of at least $36,437.02, which represented the total amount expended on child support payments and related expenses, and $250,000 in punitive damages. During discovery, all four

---

[1] Willingham entered the transcript of the meeting as an exhibit to his deposition. Some sections of the recording were inaudible.

[2] Willingham deposed that he and Gray, whom he had considered his best friend, had known each other since they were children, that their families were close, and that the friendship ended when Gray took Shadrix's side during the divorce.

parties were deposed. Willingham deposed that he and Shadrix were regularly intimate before he learned that she was pregnant with Ashton, so he had no reason to doubt that the baby was his. He also deposed that Shadrix told him at the beginning of the meeting, during a time that was inaudible on the transcript, that she knew that Ashton was not his child, although the transcript shows that she said "I knew in my gut, the timing, that she could have been but I never in my heart believed she was [Gray's.] I've always believed that she is yours. You're her dad." When asked if he had any evidence that Shadrix knew that Gray was Ashton's biological father prior to Ashton learning the DNA results, Willingham replied that he did not. When asked if he knew when Gray discovered that Ashton was his biological child, Willingham replied that he did not know. Willingham deposed that his claim that the Shadrixes and Gray conspired to deceive him was based solely on the conversation in the parking lot. When asked if he had knowledge of whether or not there was a conspiracy, Willingham replied, "I have no factual knowledge."

In his complaint, Willingham alleged that Jared, whom Shadrix married three months after the divorce, knew that Ashton was not Willingham's child when he married Shadrix. He also alleged that the Shadrixes met with Gray soon after their

marriage to discuss options for alerting him that Gray was Ashton's father. However, both the Shadrixes deposed that they discussed the infidelity but had no conversation about concealing the possibility from Willingham. Gray deposed that he never did anything to deceive Willingham, and in the transcript from a call he had with Willingham in July 2020, Gray denied being present at any meeting discussing whether to disclose the infidelity or paternity issue to Willingham and stated that he and Shadrix only had one conversation about the possibility of Gray being Ashton's father when Shadrix was pregnant.

Shadrix confirmed during her deposition that she had informed Gray that she was pregnant with Ashton but thought the baby was Willingham's. She also confirmed that she told Jared before their marriage that she had been unfaithful with Gray, and although she knew there was a possibility that Ashton was Gray's daughter, she believed Willingham was Ashton's biological father. Shadrix deposed that she disclosed to Gray that Jared knew about their affair but did not say anything about Ashton not being Willingham's daughter. Shadrix also deposed that she did not believe that Ashton resembled Gray's children, with whom her children had been friends during their childhood. Shadrix maintained that she had no factual basis to

believe that Willingham was not the legal and biological father of Ashton before the summer of 2020.

Consistent with Shadrix's testimony, Jared deposed that Shadrix told him about her affair with Gray and that there was a possibility that Ashton was not Willingham's biological child. Jared denied ever meeting with Shadrix and Gray to discuss disclosing the child's paternity to Willingham. Jared also deposed that Shadrix always believed that Willingham was Ashton's father and never told him that Gray was her father.

Gray acknowledged the conversation he had with Shadrix when she learned she was pregnant but deposed that he never thought Ashton was his child. He also deposed that Shadrix told him she had looked over the dates of her menstrual cycle and was certain the baby was Willingham's. Gray stated that he never did anything to deceive Willingham with regard to Ashton's paternity and that if he had ever been told that Ashton was his child, he would have accepted his responsibilities, which included telling his wife and Willingham.

Gray and the Shadrixes filed separate motions for summary judgment, arguing that Willingham's fraud and deceit claims failed because there was no evidence of deliberate misrepresentation or concealment with the intent to cause harm, that

Willingham did not reasonably rely on any alleged misrepresentations, and that there was no evidence of an agreement to conspire. Contrary to Willingham's version of the facts, the Shadrixes maintained that there was no evidence that they knew Ashton was not Willingham's biological child or that they conspired to keep this fact from him. The trial court granted summary judgment to Jared, finding he had no duty to disclose Shadrix's infidelity to Willingham, and denied Shadrix and Gray's motions, concluding that genuine issues of material fact remained on each of Willingham's claims. After the grant of Shadrix and Gray's application for interlocutory appeal, this appeal followed.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). "[T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008) (citation and punctuation omitted); see OCGA § 9-11-56 (c). "If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific

evidence giving rise to a triable issue." *Ellison*, 294 Ga. App. at 819 (3) (a) (citation and punctuation omitted); see OCGA § 9-11-56 (e). "[S]peculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." *Ellison*, 294 Ga. App. at 819 (3) (a) (citation and punctuation omitted).

1. In their first two enumerations of error, Shadrix and Gray argue that the trial court erred in denying their motions for summary judgment on Willingham's claim for fraud or deceit because there was no evidence they made any misrepresentation of material fact with the intent to deceive Willingham and that he did not reasonably rely on any alleged misrepresentations by failing to exercise due diligence concerning his suspicions as to Ashton's parentage. We agree.

To establish fraud and deceit,

the plaintiff must show that the defendant made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was with the intent that it be acted upon by the plaintiff; and, further, that the plaintiff acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by the defendant and to the plaintiff's proximate injury.

*Brown v. Techdata Corp.*, 238 Ga. 622, 625 (234 SE2d 787) (1977). Willingham's claims

rest upon his allegation that Shadrix and Gray knew that Ashton was not his biological

daughter but chose not to disclose it to him, but when asked if he had actual evidence

to support his allegation during his deposition, he said that he did not. Shadrix and

Gray deposed that they did not know of Ashton's parentage until June 2020, and did

not attempt to deceive Willingham. Willingham deposed that Shadrix told him at the

beginning of the parking lot meeting that she knew earlier, but the transcript of that

meeting does not support his contention.

   *Justus v. Justus*, 198 Ga. App. 533 (402 SE2d 126) (1991) is instructive here and

supports the grant of summary judgment on Willingham's claim for fraud and deceit.

In *Justus*, supra, which is procedurally different although factually analogous to the

instant case, an ex-husband filed an action for fraud and deceit against his ex-wife and

her former pastor, whom he alleged was the biological father of a child the ex-husband

thought he had fathered. Id. at 533. After the parties' divorce, the ex-wife told the

plaintiff that she engaged in sexual relations with her former pastor more than 20 years

earlier and shortly thereafter realized she was pregnant, but she considered it a very

remote possibility that the child was the pastor's child. Id. More than 20 years later,

the ex-wife's grandchild developed hematologic problems, and she reached out to the pastor to ask that he submit to blood tests in order to help the grandchild, which tests confirmed that he was indeed the child's biological grandfather. Id.

Prior to filing the fraud and deceit action, the husband sought to set aside the divorce decree, alleging fraud and deceit against the ex-wife contending that she had committed adultery, which he argued barred an award of alimony and sought to recover the sums he had expended on the daughter. *Justus*, 198 Ga. App. at 534 (1). The trial court ruled in favor of the ex-wife, and after this Court and the Supreme Court denied the ex-husband's applications for discretionary appeal, he filed a separate action for fraud and deceit. Id. The ex-wife and the pastor moved for summary judgment, which the trial court denied, and the case proceeded to a jury trial, but the trial court granted a directed verdict in favor of defendants at the conclusion of plaintiff's case. Id. at 534 (1).

On appeal, this Court held that the ex-husband's action against the ex-wife was barred by res judicata, thus we did not consider his fraud contentions as to the ex-wife. *Justus*, 198 Ga. App. at 534 (1). However, we addressed the merits of the ex-

husband's claim against the pastor premised upon his alleged concealment that he was the child's father, holding as follows:

> Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case. It cannot be denied that paternity is material in this case. There is no indication in the record, however, that [the ex-husband] ever inquired of [the pastor] regarding [the child's] paternity, and even assuming that [the pastor] possessed such knowledge as a fact, . . . we have found [no authority] suggesting an affirmative duty on [the pastor's] part to disclose it to [the ex-husband]. Moreover, imposing on [the pastor] and others in circumstances similar to those presented here an affirmative duty to disclose their paternity of children born within another's marriage would hinder, rather than advance the preservation of the family unit, which is of such utmost importance in this state that it has recently been given stature in our state constitution: "To promote the interest and happiness of the citizen and of the family, . . . we the people of Georgia . . . do ordain and establish this Constitution. . . ." We hold, therefore, that under the circumstances present here, no affirmative duty existed on [the pastor's] part to disclose to [the ex-husband] that [the child] was his child. Because no duty existed, [the pastor] could not have been guilty of a breach of duty by failing to disclose the information[.]

Id. at 534-535 (2) (citations, punctuation, and emphasis omitted). If follows here, therefore, that even assuming Gray knew that Ashton was his biological child, and Willingham has offered no evidence that he did, Gray had no duty to disclose that fact to him. Thus based on our holding in *Justus*, the trial court should have granted summary judgment to Gray on Willingham's claim for fraud and deceit.

Turning to Shadrix, she may demonstrate that there is no genuine issue of material fact by

> either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. . . . [T]he rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant . . . discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). The Supreme Court has explained that "speculation is not

enough," id. at 636 (3) (d), and although all justifiable inferences are to be drawn in the non-movant's favor, it does not mean that

> a plaintiff may defeat a defendant's properly supported motion for summary judgment without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of wrongdoing. The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict.

Id. at 634 (3) (c) (citation and punctuation omitted). See also *Berry v. Hamilton*, 246 Ga. App. 608, 610 (541 SE2d 428) (2000) (holding that "mere conjecture" is insufficient to defeat summary judgment); *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 559 (d) (644 SE2d 440) (2007) ("[a]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.") (punctuation omitted).

Willingham has failed to establish that Shadrix "made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true" to induce him to support Ashton. See *Brown*, 238

13

Ga. at 625. Although Shadrix admittedly concealed her infidelity from Willingham, she deposed that she thought Ashton was Willingham's child until she learned otherwise in June 2020, and Willingham has not established otherwise. Although he deposed that he filed for divorce due to suspected infidelity, he offered no evidence that he questioned Shadrix about whether Ashton was his child or that she intentionally misled him. Accordingly, the trial court's conclusion that genuine issues of fact remained was incorrect.

2. In a separate enumeration of error, Shadrix and Gray argue that they are entitled to summary judgment because the damages that Willingham seeks in his action are not recoverable. Again, we agree.

Damages is an element of a claim for fraud and deceit. See *Rhone v. Bolden*, 270 Ga. App. 712, 719 (5) (608 SE2d 22) (2004). "[A] plaintiff's failure to establish even one of [the] elements [of fraud and deceit] entitles a defendant to summary adjudication." *Sun Nurseries, Inc. v. Lake Erma, LLC*, 316 Ga. App. 832, 836 (1) (730 SE2d 556) (2012). Willingham sought to recover as damages the total amount he paid in child support and for medical expenses and testified to no other compensatory damages. These damages, however, are not recoverable. See *Grand v. Hope*, 274 Ga.

14

App. 626 (617 SE2d 593) (2005). Additionally, "an award of nominal damages for fraud is improper, as to establish a cause of action for fraud, a party must show that actual damages, not simply nominal damages, flowed from the fraud alleged." *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990) (citation and punctuation omitted).

In *Grand*, supra, the husband adopted the wife's two children, and after their divorce, sued her for fraud based on alleged misrepresentations that she made about her ex-husband to induce him to adopt the two children and sought damages in excess of $100,000 for what he expended during the marriage and on child support. 274 Ga. App. at 626. He also sought to recover punitive damages for her "willful misrepresentations." Id. The wife failed to answer the complaint and the trial court entered a default judgment on liability and awarded damages for the cost of the child's orthodontic treatments, punitive damages (because fraud was determined by default), and attorney fees. Id. at 627. The husband appealed, and we vacated the trial court's judgment.

Because the adoption decree remained valid and the divorce decree had not been set aside, we found "the recovery of past expenditures . . . problematic." *Grand*, 274 Ga. App. at 628 (1). We explained that

> All parents have a statutory duty to support their children. By law, it is the joint and several duty of each parent to provide for the maintenance of his or her child until the child reaches the age of majority, dies, marries, or becomes emancipated, whichever first occurs, except as otherwise authorized and ordered pursuant to subsection (e) of Code Section 19-6-15[3] and except to the extent that the duty of the parents is otherwise or further defined by court order.

Id. at 628 (1) (citation and punctuation omitted). We held that

> [f]or public policy reasons, we do not believe that [the ex-husband] can recover child rearing expenses and child support costs for which he was under a legal obligation to pay. Nor do we believe that [the ex-husband] is authorized to launch a collateral attack on the adoption and divorce decrees by means of filing an action for fraud against his ex-wife.

Id. at 630 (1).

Additionally, we pointed out that OCGA § 19-7-54 involves proceedings to set aside paternity, which the husband did not file in that case, and Willingham did not

---

[3] OCGA § 19-6-15 (e) governs the duration of child support responsibility.

file here. But even in that context, "the new statutory procedures specifically limit the monetary relief available to the issues of prospective child support payments and past due child support payments." *Grand*, 274 Ga. App. at 630 (1) (citation, punctuation, and emphasis omitted). See also *Cohen v. Nudelman*, 269 Ga. App. 517, 522 (4) (604 SE2d 580) (2004) ("[t]he legislature could have permitted a putative father who successfully sets aside a paternity determination to recoup past support payments, but it did not do so."). See generally *Roddenberry v. Roddenberry*, 255 Ga. 715, 717 (342 SE2d 464) (1986) (husband not permitted to contest child paternity and child support through filing an extraordinary motion for new trial based on newly discovered evidence that a child was not his where he could have acquired the evidence sooner by requesting a blood test). It follows from these cases that Willingham cannot utilize his fraud and deceit action to collaterally attack the divorce decree and recover as damages the amount he paid in child support and for medical expenses.[4] Thus, the trial court should have granted summary judgment to Shadrix and Gray.

---

[4] Willingham also sought punitive damages, but punitive damages can only be awarded if the underlying tort is proven. See *Whitaker Farms v. Fitzgerald Fruit Farms*, 320 Ga. 208, 218 (2) (d) (908 SE2d 531) (2024).

3. Because Willingham failed to established the elements of the underlying torts, his conspiracy claims fail as well.

> To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. The conspiracy of itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. The essential element of conspiracy is proof of a common design showing that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design. Absent the underlying tort, there can be no liability for civil conspiracy.

*Sweet City Landfill, LLC v. Lyon*, 352 Ga. App. 824, 833 (3) (835 SE2d 764) (2019) (citations and punctuation omitted). When asked if he had any evidence that the Shadrixes and Gray conspired to deceive him, Willingham replied that he did not. By his own deposition testimony, Willingham's conspiracy claim was premised upon the meeting in the parking lot, which offered no evidence of a conspiracy. Accordingly, the trial court should have granted summary judgment on the conspiracy claims as well.

*Judgment reversed. Barnes, P. J., and Watkins, J., concur.*