**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 11, 2014**

# In the Court of Appeals of Georgia

A14A0398. ATLANTA NATIONAL LEAGUE BASEBALL CLUB,
  INC. v. F. F. INDIVIDUALLY et al.

BRANCH, Judge.

On August 30, 2010, plaintiff M. F., a six-year-old girl, was sitting with her father behind the visitors' dugout at a home game of appellant Atlanta National League Baseball Club, Inc., known as the Atlanta Braves, when she was struck by a foul ball, suffering a skull fracture and brain injuries. M. F.'s parent and guardian brought this action for negligence against the Braves and three other defendants.[1] After the trial court denied the Braves' motion to dismiss for failure to state a claim or for summary judgment, the Braves moved for a certificate of immediate review,

---

[1] These three other defendants – Liberty-Media Corporation, Major League Baseball, and the Atlanta-Fulton County Recreation Authority – are not parties to this appeal.

which the trial court also denied, with the result that the Braves were unable to pursue an appeal. The Braves then moved for a declaratory judgment as to the applicable standard of care. The trial court denied this motion but granted a certificate of immediate review as to it. Having granted the Braves's application for interlocutory review of the trial court's denial of their motion for declaratory judgment, we find that such relief is not appropriate at this stage of the proceedings. We therefore affirm.

The relevant facts are not in dispute. At some point before the 2010 season, the Braves added netting to portions of both dugouts to protect players from balls leaving the field of play. At the game held at Turner Field on August 30, 2010, safety netting behind home plate protected 2,791 of the stadium's 49,856 seats, but did not extend to the seats directly behind the dugouts on either side of the field. 488 protected seats, including 53 groups of four or more seats, remained unsold. Attendance at the game was 18,842. Although a Braves representative testified that M. F. and her family would have been free to move to unsold protected seats behind home plate by notifying an usher, the same representative testified that a surcharge would apply to seats purchased in this way. In the fifth inning, M. F. and her parents, who had received their tickets as a gift, were sitting a few rows behind the visitor's dugout when a player hit the foul ball that struck M. F.

2

Plaintiffs filed this negligence action against the Braves on July 16, 2012. The Braves's answer raised defenses including that their provision of netting only behind home plate amounted to "ordinary care" for purposes of OCGA § 51-3-1.[2] . A few weeks later, on August 17, 2012, the Braves filed a motion to dismiss or for summary judgment on grounds including that they had "no duty as a matter of law to protect a spectator at a baseball game from being hit by a foul ball," or, in the alternative, that if such a duty existed, it must be "limited to protecting the seats behind home plate and protecting a sufficient number of those seats to accommodate the reasonably anticipated number of requests for protected seats." After a hearing, the trial court denied the motion. The Braves requested a certificate of immediate review, which the trial court denied, noting as it did so that it "st[ood] behind [its] ruling" denying the Braves' motion.

Shortly afterward, the Braves filed a "motion for declaratory judgment" seeking a declaration "as to the standard of care owed to Plaintiffs," which the Braves argued was "essential to the proper development of the legal issues presented and the trial of this case." The same motion also noted that it was "in no way seeking reconsideration

---

[2] OCGA § 51-3-1 provides that an owner or occupier of property is liable to invitees "for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

3

of [the trial court's] ruling" on the motion to dismiss or for summary judgment, but that it sought a declaration "so that the parties may move forward with a clear understanding regarding" plaintiffs' claims. The trial court denied this motion as well, but granted a certificate of immediate review limited to "the matters presented" by the motion for declaratory judgment and "the resulting order" denying that motion. We granted the Braves's application for an interlocutory appeal.

The Braves argue that the trial court erred when it denied their motion for declaratory judgment and refused to declare the extent of the duty the Braves owe to plaintiffs. More specifically, the Braves argue that the trial court should have declared the so-called "limited duty" or "baseball rule," in effect in various states since at least

1932,[3] as Georgia law in this context. At this stage of this litigation, we find no error in the trial court's refusal to make such a declaration of law.

We proceed under the Declaratory Judgment Act, OCGA § 9-4-1 et seq., the purpose of which is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" OCGA § 9-4-1. More specifically, OCGA § 9-4-2 provides:

> (a) *In cases of actual controversy*, the respective superior courts of this state *shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration*, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

---

[3] See, e.g., *Brisson v. Minneapolis Baseball & Athletic Ass'n.*, 185 Minn. 507, 509-510 (240 NW 903) (1932) (plaintiff spectator seated in unscreened temporary seats behind third base and injured by a foul ball could not recover from the stadium owner, who "exercise[d] the required care" by providing screening "for the most dangerous part of the grandstand and for those who may be reasonably anticipated to desire protected seats"). One court has recently construed the rule to the effect that a stadium owner's provision of "a sufficient number of protected seats behind home plate to meet the ordinary demand for that kind of seating" discharges the owner's "limited duty" to provide a reasonably safe environment for spectators at baseball games. *Benejam v. Detroit Tigers*, 246 Mich. App. 645, 651-652 (1) (635 NW2d 219) (2001). Having discharged this duty under this rule, the owner is released from taking "precautions that are clearly unreasonable" and avoids "burgeoning litigation that might signal the demise or substantial alteration of the game of baseball as a spectator sport." Id. at 654 (3) (citation and punctuation omitted).

(b) In addition to the cases specified in subsection (a) of this Code section, the respective superior courts of this state *shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party* petitioning for the declaration, whether or not further relief is or could be prayed, *in any civil case in which it appears to the court that the ends of justice require that the declaration should be made*; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

(c) Relief by declaratory judgment shall be available, notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy or remedies.

(Emphasis supplied.) As our Supreme Court noted shortly after the adoption of the Declaratory Judgment Act in 1945: "While it has often been said that [our] declaratory judgment statute should be liberally construed, it manifestly was never intended to be applicable to every occasion or question arising from any justiciable controversy, since the statute does not take the place of existing remedies." *Mayor of Athens v. Gerdine*, 202 Ga. 197 (1) (42 SE2d 567) (1947). Thus "[a] declaratory judgment is not the proper action to decide all justiciable controversies." *Porter v. Houghton*, 273 Ga. 407, 408 (542 SE2d 491) (2001); see also *Fortson v. Kiser*, 188 Ga. App. 660 (1) (373 SE2d 842) (1988) (although OCGA § 9-4-2 (c) authorizes declaratory relief even

6

when a party has other legal remedies, "that statute obviously does not require the availability of such relief").

"The object of [a] declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated." *State Highway Dept. v. Ga. Southern &c. Rwy. Co.*, 216 Ga. 547, 548-549 (2) (117 SE2d 897) (1961) (citation and punctuation omitted). A party seeking such a judgment "must establish that it is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests." *Porter*, 273 Ga. at 408 (footnote omitted). Thus "[a] declaratory judgment action will not lie where the rights between the parties have already accrued, because there is no uncertainty as to the rights of the parties [or] risk as to taking future action." *Thomas v. Atlanta Casualty Co.*, 253 Ga. App. 199, 201 (1) (558 SE2d 432) (2001) (citations omitted). It follows from these principles that, as both Georgia appellate courts have held, "'declaratory judgment is not available to a party merely to test the viability of [that party's] defenses.'" *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 345 (489 SE2d 803) (1997), quoting *Sentry Ins. v. Majeed*, 194 Ga. App. 276 (390 SE2d 269) (1990), aff'd., 260 Ga. 203 (391 SE2d 649) (1990); see also *State Farm Fire & Casualty Ins. Co. v. Fuller*, 50 Ga. App. 387 (258 SE2d 13) (1979). Where a party seeking declaratory judgment does not show that

7

it "is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper; otherwise, the trial court will be issuing an advisory opinion, and the Declaratory Judgment Act makes no provision for a judgment that would be advisory." *Baker v. City of Marietta*, 271 Ga. 210, 214 (518 SE2d 879) (1999).

Here, the event giving rise to the Braves' potential liability has already occurred, and a declaratory judgment is not the proper means by which to test their defense that their observation of the baseball rule, or some variant of it, satisfied their duty of care to plaintiffs. The Braves also have not shown "the existence of any extraordinary facts" that would render an adjudication of their rights necessary "in order to relieve [them] from the risk of taking any future undirected action incident to [their] rights, which action without direction would jeopardize [their] interest." *Gerdine*, 202 Ga. at 197 (2). Any safety precaution the Braves make take in the future is not incident to their rights as to these plaintiffs, with the result that declaratory relief is not available to the Braves. Id. (reversing denial of demurrer to a property owner's petition for declaratory judgment concerning a municipal assessment when plaintiff already had an "adequate remedy in law" to contest the assessment); *State Hwy. Dept.*, 216 Ga. at 548-549 (dismissing petition for declaratory relief when railroad had not

8

shown that an adjudication of its rights concerning a right-of-way was necessary to relieve railroad from the risk of taking any future action that might jeopardize its interests). Finally, it is not for this Court to issue an advisory opinion as to acts or omissions that have not yet occurred. *Baker*, 271 Ga. at 214 (1) (trial court erred in ruling on a petition for declaratory relief when appellant and defendant city had failed to show the existence of a justiciable controversy, or that "circumstances exist which require judicial guidance to protect the city from uncertainty regarding some future act or conduct"); OCGA § 9-4-7 (a) ("No declaration shall prejudice the rights of persons not parties to the proceeding.").

For these reasons, the trial court did not err when it denied the Braves' motion for a declaratory judgment.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*