**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 12, 2025**

# In the Court of Appeals of Georgia

A25A1071. NORRIS et al. v. ATLANTA BRAVES, INC. et al.

DAVIS, Judge.

In this personal injury action, Mayra and Scott Norris (the "Plaintiffs") filed suit against Atlanta Braves, Inc. and Jorge Soler (the "Defendants") after Mayra was struck and injured by a baseball during a baseball game. The Plaintiffs appeal from the trial court's order granting the Defendants' motion to dismiss for failure to state a claim, arguing in three related claims that the trial court erred by determining that their claims were barred by the "Baseball Rule." For the reasons that follow, we reverse the trial court's order granting the Defendants' motion to dismiss.

"We review de novo the trial court's order granting a motion to dismiss for failure to state a claim. We take the allegations in the complaint as true and resolve all

doubts in favor of the plaintiff." (Citations and punctuation omitted.) *110 Hampton Point, LLC v. Ross*, 368 Ga. App. 630 (890 SE2d 33) (2023).

So viewed, the Plaintiffs alleged in their complaint that on October 29, 2021, they attended a World Series game between the Atlanta Braves and the Houston Astros at Truist Park, and they sat in section 109 in the right field corner of the stadium. The complaint is silent as to whether the Plaintiffs sat in an area of the stadium protected by netting. Before the game resumed in the fifth inning, Soler, a right-fielder for the Braves at the time, stood in the outfield. According to the Plaintiffs, Soler threw a baseball "overhand, with great force, speed, and intensity" in Mayra's "immediate direction," and she did not have time "to react or to avoid impact from the ball." The Plaintiffs alleged that the game was not in play at the time and that Soler's throw was neither incidental to the game nor a warm-up between the players. The complaint alleges that the baseball struck Mayra in her right eye, and she sustained multiple fractures, a right eye edema, and an infra-orbital abrasion.

The Plaintiffs filed the instant action, asserting premises liability and vicarious liability claims against the Atlanta Braves, negligence, loss of consortium, and punitive damages claims against both Defendants, and they also sought attorney fees pursuant

to OCGA § 13-6-11.[1] The Defendants answered the complaint and jointly filed a motion to dismiss, arguing that the Plaintiffs failed to state a claim upon which relief could be granted. The Defendants argued that the Baseball Rule barred their claims since spectators assume the risk of being injured by a baseball at a baseball game.[2] After a hearing, the trial court granted the Defendants' motion to dismiss, concluding that the Plaintiffs' claims were barred by the Baseball Rule which "appl[ies] . . . to all risks inherent to unprotected seats at a baseball stadium." The court reasoned that "[s]ouvenir baseballs thrown into the crowd are clearly inherent to the game of

---

[1] The complaint named Soler and Atlanta Braves, Inc. as the Defendants, but the Plaintiffs later filed a motion to amend their complaint and substitute Atlanta National League Baseball Club, Inc. for Atlanta Braves, Inc. It does not appear from the record that the trial court ruled on the motion.

[2] The Plaintiffs attached affidavits to their response to the motion to dismiss but the trial court ruled that the affidavits would not be considered. Thus, the motion to dismiss was not converted into a motion for summary judgment. See *Islam v. Wells Fargo Bank, N. A.*, 327 Ga. App. 197, 200 (1) (757 SE2d 663) (2014) ("Although a trial court has the option to consider evidence attached to a motion to dismiss and brief in support thereof, when it does so it converts the motion to dismiss into a motion for summary judgment, governed by OCGA § 9–11–56.") (citation omitted). We also will not consider the affidavits in this appeal. See *Alexander v. Francis*, 369 Ga. App. 580, 594 (3) (b) n. 53 (894 SE2d 161) (2023) ("It is an ancient and honored tenet of law that we do not take evidence from the briefs of the parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court.") (citation omitted).

baseball, and being struck by one is an inherent risk for those in [the] Plaintiffs' position." Thus, the trial court concluded that "Soler's throw was an inherent risk to the area in which Plaintiffs chose to sit at Truist Park during a live baseball game[,] [and] [t]herefore[] the Baseball Rule applies and bars Plaintiffs' claims." This appeal followed.

In three related claims of error, the Plaintiffs argue that the trial court erred by (1) applying the Baseball Rule to all risks inherent to unprotected seats at a baseball stadium; (2) applying the Baseball Rule to intentional and reckless misconduct of baseball players between innings; and (3) interpreting and applying the Baseball Rule in a broad manner so as to violate public policy. We conclude that the trial court erred by determining that the Baseball Rule barred the Plaintiffs' claims at the motion to dismiss stage.

> The well-established test that must be satisfied before a motion to dismiss can be granted is a demanding one: A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence

4

within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *110 Hampton Point, LLC*, supra, 368 Ga. App. at 630.

[C]omplaints do not have to allege facts sufficient to set forth a cause of action and are no longer to be construed most strongly against the pleader. And it is no longer necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim. If, *within the framework of the complaint*, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

(Citation omitted; emphasis in the original) *Mitchell v. Capehart*, 353 Ga. App. 461, 463 (838 SE2d 125) (2020). And "any doubts regarding the complaint must be construed in favor of the plaintiff." (Citation omitted.) *McLeod v. Costco Wholesale Corp.*, 369 Ga. App. 717, 718 (894 SE2d 442) (2023). With these principles in mind, we turn to the Plaintiffs' claims.

(a) *Negligence, Premises Liability, and Vicarious Liability*. "It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages." (Citation omitted.) *Ware v. Jackson*, 357 Ga. App. 470, 476 (2) (848 SE2d 725) (2020). "In a premises

liability claim, the owner or occupier of land owes a duty to an invitee to keep the premises and approaches safe." (Citation and footnote omitted.) *Suresh & Durga, Inc. v. Doe*, 369 Ga. App. 787, 789 (1) (a) (i) (894 SE2d 602) (2023). "In order to recover on a premises liability claim, a plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." (Citation omitted.) *Crebs v. Bass Pro Outdoor World*, 360 Ga. App. 121, 122 (860 SE2d 802) (2021). As to vicarious liability, "[w]hen a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master." (Citation omitted.) *Dougherty Equip. Co., Inc. v. Roper*, 327 Ga. App. 434, 436 (1) (a) (757 SE2d 885) (2014).

Here, the Plaintiffs alleged in their complaint that the Atlanta Braves had exclusive ownership, possession, and control over the stadium. According to the Plaintiffs, the Defendants breached their duties when Soler threw the baseball "overhand" "with a great deal of speed and force" in Mayra's direction while Soler was acting within the scope of his employment with the Atlanta Braves, thereby

causing her substantial injury. Thus, construing the complaint in the Plaintiffs' favor, it is apparent that within the framework of the allegations the Plaintiffs may be able to introduce evidence to establish their negligence, premises liability, and vicarious liability claims, and thus the trial court erred by dismissing these claims.

Nevertheless, the trial court concluded that the claims were due to be dismissed pursuant to the so-called "Baseball Rule." It is true that in the context of liability for injuries sustained at a baseball game, we have stated that

> one who buys a ticket for the purpose of witnessing a baseball game and who chooses or accepts a seat in a portion of the grandstand which his own observation will readily inform him is unprotected, voluntarily assumes the risks inherent in such a position, since he must be presumed to know that there is a likelihood of wild balls being thrown and landing in the grandstand or other unprotected areas.

*Hunt v. Thomasville Baseball Co.*, 80 Ga. App. 572, 573 (56 SE2d 828) (1949). But a search of our caselaw has not uncovered any precedent pronouncing any special rule or analysis for courts to employ in analyzing negligence claims premised on injuries received at a baseball game, and we are unaware of any authority from the Supreme Court of Georgia requiring courts to employ any particular test in analyzing such

negligence claims.[3] Instead, in its simplest terms, this "Baseball Rule" is merely a specific application of the assumption of risk doctrine concerning risks inherent to baseball games, which is an affirmative defense. See *Giddens v. Metropower, Inc.*, 366 Ga. App. 15, 17 (880 SE2d 595) (2022) (stating that assumption of the risk is an affirmative defense); *Sutton v. Sumner*, 224 Ga. App. 857, 859 (482 SE2d 486) (1997) (discussing *Hunt* within the assumption of risk doctrine). The assumption of risk doctrine

> bars a plaintiff from recovering on a negligence claim if it is established that [the plaintiff], without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk means that the plaintiff has both actual and subjective knowledge of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.

---

[3] Indeed, it appears that the only time that the term "Baseball Rule" has been used was in *Atlanta Nat. League Baseball Club, Inc. v. F. F.*, 328 Ga. App. 217 (761 SE2d 613) (2014). Still, in that case, we did not pronounce any particular test or standard for negligence claims based on injuries received at a baseball game. Instead, we merely acknowledged that other jurisdictions utilize the rule in denying relief on negligence claims. Id. at 219 n.3.

(Citation omitted.) *Ga. Power Co. v. Brandreth Farms, LLC*, 364 Ga. App. 816, 825-826 (4) (875 SE2d 444) (2022).

But we have been clear that "a plaintiff has no obligation to anticipate and plead away any defenses in [their] complaint." *Speedway Motorsports, Inc. v. Pinnacle Bank*, 315 Ga. App. 320, 323 (1) (727 SE2d 151) (2012). Thus, a motion to dismiss for failure to state a claim can be granted upon an affirmative defense *only* "when the elements of the defense are admitted by the plaintiff or completely disclosed on the face of the pleadings." (Citation and punctuation omitted.) Id. "[I]f the facts alleged in the complaint merely fail to affirmatively disprove a defense, no dismissal is warranted." Id. Here, none of the elements of the assumption of risk defense were admitted in the complaint or disclosed on the face of complaint. There is no allegation in the complaint to indicate that the Plaintiffs had knowledge of the danger that a baseball could be thrown "overhand, with great force, speed, and intensity" in Mayra's direction when the game was not in play. Furthermore, there is nothing in the complaint to indicate that the Plaintiffs understood and appreciated the risk of a baseball being thrown in Mayra's immediate direction when the game was not in play and that they voluntarily exposed themselves to this risk. Consequently, the pleadings

9

do not conclusively establish the Defendants' assumption of the risk defense so as to authorize a dismissal of the Plaintiffs' complaint at the motion to dismiss stage. See *Speedway Motorsports, Inc.*, 315 Ga. App. at 323-324 (1) (trial court erred by dismissing plaintiff's claims based on the defendant's affirmative defenses because the allegations in the complaint did not affirmatively prove the defenses).

The Defendants rely on our decisions in *Hunt* and *Dalton v. Jones*, 260 Ga. App. 791 (581 SE2d 360) (2003), in arguing that the Baseball Rule is dispositive of the Plaintiffs' claims. However, these cases are distinguishable both factually and procedurally. In *Hunt*, a spectator was struck by a baseball at a baseball game while sitting in a seat unprotected by netting during a pre-game warm-up. *Hunt*, 80 Ga. App. at 572. It is true that, applying the Baseball Rule, we concluded that the plaintiff's claims were properly dismissed because he assumed the risk of injury by purchasing the ticket and sitting in an unprotected area. Id. at 572-573. But *Hunt* is distinguishable because the plaintiff specifically alleged that he was seated in an area of the stadium that did not have a barrier between the field and the grandstand where he was seated. *Hunt*, 80 Ga. App. at 572. Additionally, the plaintiff alleged that he was struck with the baseball during a pre-game warm-up, which we determined was a necessary part

of the ball game thereby warranting the application of the Baseball Rule. Id. at 574. Here, however, the complaint does not state whether the Plaintiffs were seated in an area of the stadium unprotected by netting, and whether the Plaintiffs had personal knowledge of the risk of being injured by a baseball while attending a baseball game. Moreover, the Plaintiffs alleged that the game was not in play when Soler threw the ball and that the throw was not incidental to the game nor a warm-up between the players. We note that other jurisdictions have applied the Baseball Rule where the plaintiff has some knowledge of the game of baseball and where the injury occurs during an activity inherent to the game itself. See, e.g., *Coomer v. Kansas City Royals Baseball Corp.*, 437 SW3d 184, 198 (II) (Mo. 2014) (noting that the "wall of authority in support of the Baseball Rule is badly cracked in cases where a spectator is injured by a ball when the game is not underway or where fans ordinarily do expect to have to keep a careful lookout for balls or bats leaving the field.") (emphasis omitted); *Lowe v. California League of Professional Baseball*, 56 Cal.App.4th 112, 122-124 (4th Dist. Ct. App. CA 1997) (assumption of risk doctrine did not bar plaintiff's negligence claims from injuries received after being struck by a foul ball because the plaintiff was distracted when the team's mascot "repeatedly" hit the plaintiff with his tail, and

11

such "antics" by the mascot were deemed not to be an integral part of a baseball game). But see *McNiel v. Fort Worth Baseball Club*, 268 SW2d 244, 247 (Tex. Civ. App. 1954) (determining that the Baseball Rule applied where the plaintiff was familiar with the game of baseball and the injury occurred during preliminary practice, which was incidental to the game).

Moreover, *Hunt* involved the propriety of a trial court's order sustaining a general demurrer. Id. at 572. In conducting an analysis to determine whether a general demurrer should be granted, "the allegations of a pleading [were] to be construed *most strongly* against the pleader[.]" (Citations omitted; emphasis supplied.) *Ayers v. Baker*, 216 Ga. 132, 136 (114 SE2d 847) (1960). And in examining the sufficiency of a petition, the test was whether "the defendants can admit all that is alleged and escape liability." Id. The legal framework for adjudicating general demurrers did not require trial courts to resolve all doubts of the complaint in the plaintiff's favor, nor did it require trial courts to analyze whether within the framework of the complaint the plaintiff *could* introduce evidence to sustain a grant of relief as is required for motions to dismiss under OCGA § 9-11-12 (b) (6). Therefore, because *Hunt* differs factually from this case and the legal framework for adjudicating general demurrers substantially differs

from the legal framework applicable to motions to dismiss for failure to state a claim, we cannot conclude that *Hunt* bars the Plaintiffs' claims at this stage of the proceedings.

In *Dalton*, the issue was whether the trial court properly granted the defendants' *motion for summary judgment* on the Plaintiff's negligence claims for injuries she received after she was struck by an "errant" baseball between innings while attending an Atlanta Braves game. *Dalton*, 260 Ga. App. at 791. The evidence showed that the plaintiff was heading towards the concession stand when she was "suddenly" hit in the face by the baseball. Id. The plaintiff admitted that she did not see the ball coming towards her, she was not watching the field at the time the ball was thrown, the throw occurred while two players were pitching the ball between themselves, and the baseball was not intentionally thrown into the stands. Id. at 792-793 (1)-(2). Thus, *based on the evidence in the record*, we concluded that her claims were barred by the Baseball Rule because not only was she seated in an uncovered section of the stadium, but "[b]y her own admission, [she] did not see the ball coming towards her[] and apparently was not keeping a close lookout on the field," and the evidence merely showed that she was struck by "an errant baseball." Id. at 792-793 (1) - (2).

13

But unlike *Dalton*, the complaint here is silent as to whether Mayra was seated in an unprotected area, whether the baseball was a souvenir ball or an "errant" ball, whether she kept a close watch of the field, or whether she was injured despite taking reasonable precautions. And here, we are tasked with reviewing an order granting a motion to dismiss for failure to state a claim rather than a summary judgment order. *Dalton*, 260 Ga. App. at 791. We have previously noted the distinction between the legal standards and analysis applicable to motions for summary judgment and motions to dismiss for failure to state a claim. We have been clear that "while evidence *beyond* mere allegations [is] required in order for [a party] to prevail on summary judgment motion, not so for motions to dismiss for failure to state a claim." (Citation and punctuation omitted; emphasis in original.) *McLeod v. Costco Wholesale Corp.*, 369 Ga. App. 717, 721 n.8 (894 SE2d 442) (2023). Instead, at the motion to dismiss stage where the parties have not yet conducted *any* discovery, we are only tasked with examining the sufficiency of the pleadings and determining whether within the framework of the complaint evidence may be introduced to sustain a grant of relief. *Williams v. DeKalb County*, 308 Ga. 265, 268 n.6 (840 SE2d 423) (2020). Here, "it cannot be said with certainty that within the framework of the complaint no evidence

14

could be introduced that would support the claims for relief, [and therefore] the motion to dismiss should have been denied." (Citation and punctuation omitted.) *Webb v. Bank of America*, N. A., 328 Ga. App. 62, 64 (761 SE2d 485) (2014).[4]

(b) *Loss of Consortium, Punitive Damages, and Attorney Fees.* It is well settled that "where the injured person and the spouse combine their separate claims in one suit, the loss of consortium claim is a derivative claim[.]" (Citation and punctuation omitted.) *Priester v. Turner*, 370 Ga. App. 269, 270 (896 SE2d 710) (2023); see also *Behforouz v. Vakil*, 281 Ga. App. 603, 604 (636 SE2d 674) (2006) (holding that the trial court properly granted summary judgment on the husband's loss of consortium claim because it was derivative of the wife's personal injury claims which failed as a matter of law). Additionally, "[a]wards of punitive damages . . . are derivative of underlying claims[.]" (Citation omitted.) *Whitaker Farms, LLC v. Fitzgerald Fruit Farms, LLC*, 320 Ga. 208, 218 (2) (d) (908 SE2d 531) (2024), and where the underlying claims remain pending a dismissal of the derivative punitive damages claim is not authorized. *Stephen A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 682 (7) 754 SE2d 640) (2014). Similarly, "[a]ttorney fees and expenses of litigation under OCGA

---

[4] In light of this conclusion, it is unnecessary for us to address the Plaintiffs' claim that the trial court's application of the Baseball Rule violated public policy.

§ 13-6-11 are ancillary and recoverable only where other elements of damage are recoverable on the underlying claim." (Citation omitted.) *Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140, 156-157 (5) (850 SE2d 191) (2020). Because Scott included his loss consortium claim with Mayra's claims in the same suit and we have determined that the trial court erred by dismissing the underlying negligence claims, it necessarily follows that the trial court also erred by dismissing the derivative loss of consortium, punitive damages, and attorney fees claims.

Accordingly, for the foregoing reasons, we reverse the trial court's order granting the Defendants' motion to dismiss.

*Judgment reversed. Rickman, P. J., concurs. Gobeil, J., concurs specially.*

16

# In the Court of Appeals of Georgia

A25A1071. NORRIS et al. v. ATLANTA BRAVES, INC. et al.

GOBEIL, Judge, concurring specially.

I agree with much that is said in the majority opinion, although I do not agree with the entirety of the analysis. Nevertheless, I agree that the Plaintiffs' complaint survives this early stage of litigation. See generally *Babalola v. HSBC Bank, USA, N. A.*, 324 Ga. App. 750, 752 (2) (751 SE2d 545) (2013) ("the Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirements of the Act") (citation and punctuation omitted).

I also agree with the majority that the so-called "baseball rule" is, at its core, a situation-specific application of the assumption of the risk doctrine, which we have applied, at the summary judgment stage, in a variety of situations involving potentially dangerous amusement or entertainment activities. See, e.g., *Fun Spot of America of Atlanta, Inc. v. Johnson*, 371 Ga. App. 123, 125-126 (899 SE2d 766) (2024) (reversing denial of defendant theme park's motion for summary judgment in park visitor's personal injury action wherein he alleged that he suffered injury after another visitor crashed into the back of his go-kart; record evidence, including that visitor had previously ridden on course and was aware go-karts were driver-operated and occasionally made contact with one another during ride, and theme park had posted "RIDE AT YOUR OWN RISK" sign, held sufficient as a matter of law to demonstrate that visitor assumed risk associated with go-kart course); *Woolbright v. Six Flags Over Georgia, Inc.*, 172 Ga. App. 41, 41-42 (1) (321 SE2d 787) (1984) (affirming grant of summary judgment to defendant amusement park based on plaintiff's assumption of the risk where plaintiff sustained injury after riding roller coaster and her deposition revealed she was familiar with roller coasters in general, had ridden the subject roller coaster on prior occasions, and amusement park had

2

posted sign warning passengers of risks; "[t]he possibility that [plaintiff] had not experienced the effect [of the roller coaster] to the extent she did at the time she was injured does not cancel [plaintiff]'s assuming the risk of sustaining an injury when she voluntarily chose to ride" on roller coaster); *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465, 465 (314 SE2d 444) (1984) (observing that danger of water slide was "patent and obvious to anyone familiar with the ride").

Importantly, in each of the above-described cases, the plaintiff's appreciation of the risks and common sense experience with the dangers inherent in certain activities were relevant to the assumption-of-the-risk analysis. In keeping with this logic, I am skeptical of the Plaintiffs' emphasis on their allegation that Soler's throw was "intentional" or "purposeful." Any number of intentional acts potentially occurring during a baseball game are inherently risky to attendees, including, for example, an offensive player hitting a home run ball that lands in an area where fans are seated, or a defensive player colliding with fans while attempting to catch a foul ball. But, the fact that a defendant undertakes an inherently risky act with purpose or intention — standing alone — is not necessarily relevant to an assumption-of-the-risk analysis.

In sum, I agree that the Plaintiffs' complaint is sufficient to withstand the motion to dismiss, although I reiterate that we express no opinion as to the merits of this case at the summary judgment or directed verdict stage. See *Norman v. Xytex Corp.*, 310 Ga. 127, 136 (2) (d) n. 10 (848 SE2d 835) (2020) (noting that any "difficulty [the plaintiffs may have] in ultimately proving their case is not a basis to dismiss their claims at the pleading stage; at this stage, at least, there exists some possibility that the [plaintiffs] could introduce some evidence to warrant some of the relief they seek").